Mary LeBlanc NORDMANN, wife of/and
Ervin A. Nordmann, Plaintiffs-
Appellees,

v.

NATIONAL HOTEL COMPANY, d/b/a
The Jung Hotel et al., Defendants-
Appellants.

No. 26894.

United States Court of Appeals,
Fifth Circuit.

April 19, 1970.

Ashton R. Hardy, New Orleans, La., for defendants-appellants.

Phillip A. Wittmann, David L. Stone, New Orleans, La., for plaintiffs-appellees.

Before RIVES, BELL and DYER, Circuit Judges.

RIVES, Circuit Judge:

Mr. and Mrs. Nordmann sued the National Hotel Company for damages which resulted from a robbery and assault committed upon them in a Jung Hotel room in New Orleans between 12:10 A.M. and 1:10 A.M. on October 18, 1965. The Nordmanns, accompanied by a friend and business associate, William Mixon, registered into the hotel as paying guests the previous afternoon. That evening, with several other friends, they attended a ball in the hotel ballroom. The hotel contains some twelve hundred guest rooms, and there were some twelve to fourteen hundred people at the ball. Shortly after midnight, when the Nordmanns left the ball and started up to their room, they entered a self-serving, automatic type elevator. They were followed by the man who later robbed and assaulted them. When they left the elevator they did not notice that this man followed until Mr. Nordmann put the key in the door. At that time the man thrust a gun in Nordmann's back and pushed them into the room and on the bed. He took such money as Nordmann had in his wallet, fifty dollars, forced him to lie face down on the bed, had Mrs. Nordmann get a razor blade from the bathroom and cut a section of a venetian blind cord with which he tied Nordmann's hands behind his back. He announced that "It's not just the money I want, that's not all I want." He proceeded to make indecent advances to Mrs. Nordmann, repeatedly slapping and hitting her, and forced her to mix him two drinks. Finally, on her plea to let her mix him another drink or get water for her husband, Mrs. Nordmann was permitted to go back into the bathroom. She described the conclusion of the assault thus:

"So, when I got into the bathroom I turned my head, and as I turned my head I could see that he walked over to my husband and pulled his collar loose, and when he did, I don't know what came over me, but the bathroom door was close enough to the knob of the main door, that I said, 'Dear, God don't let that chain be on that door,' because I reached out and I turned that knob and I opened the door and I ran screaming down the hall. That's all

that I remember as far as that episode was concerned."

The assailant fled down an inside fire escape and has never been captured.

This appeal is from a judgment entered on a jury's verdict for $16,000 in favor of Mrs. Nordmann and for $5,000 in favor of Mr. Nordmann. Six grounds are urged for reversal. We find no merit in any of them and affirm.

## I.

Appellants contend that the jury at first returned a verdict finding, in answer to a special interrogatory, that the defendant was not negligent, and that judgment for the defendants should be entered on that verdict.

The jury had retired to consider its verdict at 7:35 P.M. At 10:10 P.M., the jury returned to the courtroom and the foreman announced that they had arrived at a verdict. The verdict was received by the Clerk and handed to the Judge, who declined to accept it, stating:

"Mr. Foreman, the verdict is not consistent. I am going to reissue my instruction to you, and ask you to go back and reconsider it."

After further instructions, the jury again retired to consider its verdict at 10:30 P.M. After the jury had thus retired for the second time, counsel for the defendants asked "that the Court recall the verdict and make it a part of the record at this time, and allow the jury to have another set of interrogatories, or the same set, but another copy of the interrogatories."

The court declined this request and did not at that time advise counsel as to what the jury had marked on the interrogatories as first returned.

At 11:07 P.M. the jury returned with the verdict upon which judgment was entered. In pertinent part, the final verdict read as follows:

"1. Was the Jung Hotel, through its employees agents and/or representatives negligent? *Yes*

"2. If so, was this negligence a proximate cause of the injuries sustained by the plaintiffs? *Yes*

"3. Was the plaintiff, Mrs. Mary LeBlanc Nordmann, guilty of contributory negligence? *No*

\* \* \* \* \* \* \* \* \* \*

"6. What is the total amount of damages to which the plaintiff, Mrs. Mary LeBlanc Nordmann, is entitled to recover? *$16,000.00*

"7. Was the plaintiff, Ervin A. Nordmann, guilty of contributory negligence? *No*

\* \* \* \* \* \* \* \* \* \*

"10. What is the total amount of damages to which the plaintiff, Ervin A. Nordmann, is entitled to recover? *$5,000.00*

"June 18, 1968 (Signed) John B. Vaughn Foreman"

After accepting that verdict, the court announced that judgment would be entered accordingly and at 11:15 P.M. excused the jury. Counsel for the defendants moved the court for a mistrial. In refusing that motion, the court stated

for the record the answers to the interrogatories on the verdict as first returned, in pertinent part as follows:

"The answer to question No. 1, 'Was The Jung Hotel through its employees, agents and/or representatives negligent?' They had first circled 'yes' in pencil, then they had circled 'no' in pencil, and finally in ink, they had written 'no.' Then question No. 2, 'If so, was this negligence a proximate cause of injuries sustained by plaintiffs?' Answer yes or no. They had apparently circled the word 'yes' in pencil, but had left it blank, otherwise, that they had erased the word 'yes.'

"Then, they had unquestionably answered question No. 3, 'Was the plaintiff, Mrs. Mary LeBlanc Nordmann, guilty of contributory negligence?' There was no question in that they had originally put in ink 'no.' They left it 'no.'
" * * *

"Then, No. 6 was, 'What is the total amount of damages to which the plaintiff, Mrs. Mary LeBlanc Nordmann, is entitled to recover?' That was originally answered $16,000.00." * * *

"Then, 7, 'Was the plaintiff, Ervin A. Nordmann, guilty of contributory negligence? The original answer was 'no,' written in ink, circled in 'no' and left it that way, as was presented in the original * * *.

" * * * And then to No. 10, 'What is the total amount of damages to which the plaintiff, Ervin A. Nordmann, is entitled to recover?' When it came in for the first time, it was $5,000.00."

The appellants emphasize that the verdict was signed in ink by the foreman and that, as first returned, only three answers had been written in ink, *viz.*, the answers "no" to questions 1, 3 and 7. No authority is cited, however, which would require or permit the court to ignore the penciled answers.

The court had instructed the jury that the answer "no" to the first question would end the case, and that questions 3

and 7 should be answered only in the event that both questions 1 and 2 had been answered in the affirmative. The fact that questions 2, 3 and 7 were answered was inconsistent with any negative answer to the first question.

■ The answer "no" to the first question was also inconsistent with the answers to questions 6 and 10, which in effect constituted the general verdict. We agree with 2B Barron & Holtzoff, Wright ed., § 1059:

"The provisions of Rule 49(b) respecting the consistency of answers to interrogatories cover three contingencies: (1) when the answers and verdicts are harmonious, (2) when the answers are consistent with each other but one or more is inconsistent with the verdict, and (3) when the answers are inconsistent with each other and one or more is also inconsistent with the verdict. Only in the second and third situations is difficulty likely to be encountered. In the first situation, the court is required by the rule to direct the entry of the appropriate judgment upon the verdict and answers. In the second situation, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict or it may return the jury for further consideration of its answers and verdict or may order a new trial. In the third situation the court may not direct the entry of a judgment but may return the jury for further consideration or may order a new trial."

The present case presented the third situation and the court properly chose to return the jury for further consideration. *See* Welch v. Bauer, 5 Cir. 1951, 186 F.2d 1002, 1004. The positive answers of the jurors when individually polled leave no doubt as to their intention or genuine verdict.

### II.

■ The appellants' next argue that "the verdict of the jury is contrary to

the law and the evidence." This contention is almost frivolous. The law imposes upon innkeepers *at least* ordinary or reasonable care to protect their guests against injury by third persons,[1] and some cases call for the exercise of a higher degree of care.[2] In this case the court, by its instructions, held the defendants to a standard of ordinary or reasonable care to protect the hotel's guests from injury by third persons.

The complaint charged the defendants with negligence in the following particulars:

1. Permitting criminals, sex deviates and vagrants to wander indiscriminately about the hotel;

2. Failure to maintain a competent staff of employees;

3. Failure to maintain adequate security personnel;

4. Failure to summon the police immediately; and

5. Failure to have the hotel security officer investigate the incident as soon as it was reported to a hotel employee.

The evidence was ample to support the jury's verdict. For its twelve hundred rooms, and with a large ball in progress, the hotel had on duty at the time of the robbery and assault only one security officer, one room clerk and one bellboy. The jury could, with reason, determine that the defendants had failed to perform their general duty to protect their guests. The evidence of the defendants' negligence after the incident was reported is much stronger.

The occupant of the adjoining room was David DuCharme, an insurance adjuster, who happened to be working on some of his papers when his attention was distracted by the happenings. He heard in a male voice the demand for a knife, for a razor blade, and a woman's voice in response, then "the man who had directed the demand for the knife told the woman to cut down the venetian blind cord."

Mr. DuCharme continued to describe in detail just what he had been able to hear of what was happening in the next room. He became convinced that a robbery and assault were taking place. Taking the telephone, he got under the bed covers to prevent his own report from being heard, and got the telephone operator to whom he stated in substance: "I said, 'This is Dave DuCharme in Room 1048. There is a hold-up or there is a robbery and attempted rape'—I believe were very near the words I used—'going on in the room next to mine.' * * * I said, 'This is an emergency. Call the police immediately. This is an emergency.' And I repeated myself, 'There is a robbery and attempted rape going on in the next room to me. It is an emergency. Call the police immediately.'" Instead of taking action herself, the operator responded that, "I will connect you with the room clerk." When the room clerk answered, DuCharme repeated substantially the same report: "I said, 'I have just told the operator, and I am telling you.' I said, 'This is an emergency. I want you to call the police immediately.' And I identified myself again. I said, 'This is Dave DuCharme in Room 1048. There is a robbery and attempted rape going on in the room next to mine.' And I repeated myself two or three times again, and stated, 'This is an emergency. Call the police immediately.'" The room clerk's response was "well, you know, it takes the police 15 or 20 minutes to get here," and DuCharme replied: "I didn't ask you any questions about time. I told you this was an emergency and to call the police immediately." DuCharme estimated it

1. Edwards v. Great American Insurance Co., La.App. 2d Cir. 1962, 146 So.2d 260, 262; Miller v. Derusa, La.App. 1st Cir. 1955, 77 So.2d 748, 749; Wilson v. Iberville Amusement Co., La.App. Orl.1938, 181 So. 817, 818.

2. See dictum in Wilson v. Iberville Amusement Co., *supra* n. 1; 43 C.J.S. Innkeepers § 22.

took approximately 5 minutes in which even to report the robbery and assault.

That was only the beginning of the delay. The room clerk admitted that he did not immediately call the police. There were policemen on duty in the ballroom, but they were never summoned. Instead, the room clerk started looking for the security officer or house detective. The jury could have found from the evidence that the police were not actually called until more than 40 minutes after Mr. DuCharme notified the telephone operator and the room clerk of the "emergency" and "robbery and attempted rape." When the police finally were called at 1:11 A.M., according to the time precisely stamped by time clock, patrolmen arrived at the hotel within 4 minutes but long after the assailant's escape. Indeed, Mr. DuCharme confronted the room clerk with a demand for the reason the police were not notified earlier and met only the desultory response, "We were real busy at the time and we can't be calling the police for everybody that calls down here." There was ample evidence to support the jury's verdict.

### III.

The appellants complain that prejudicial comments by the district judge deprived the defendants of a fair jury trial. Various comments by the judge as to questioning the witnesses and as to the evidence are criticized, but the crux of this contention is the court's comment made during the testimony of Mr. Platz, the hotel's room clerk The court's remarks were concerned with the relevancy and propriety of the previous question by appellees' attorney, to which counsel for appellants had objected:

"The Court: I sustain—no, I overrule your objection, I mean. If this man's going to ignore the thing and just walk off and go hunt for somebody or something, I overrule the objection. He's testified that—he testified that, instead of calling the police, he started hunting for the

security officer. Isn't that what he testified to?

"Mr. Hardy [appellant's counsel]: That is absolutely right, but that wasn't the question I objected to, Judge. Would you read the question back, Mr. Reporter?

"(Whereupon, the reporter read back the last pending question.)

"The Court: He has a right to examine this man on his testimony as to what he did and if he walked off, he has a right to question him about that, and that's what he was doing.

"Mr. Hardy: Judge, I would also like to reserve my right to take an exception to Your Honor's remarks about what occurred there in the hotel.

"The Court: I am just simply—I have a right to comment on the testimony and keep the record straight.

"Mr. Hardy: I understand, Your Honor.

"The Court: Take the exception. Go ahead and take the exception.

Now, this man—you are making an objection, and he is only asking questions—I simply said that he has a right to bring out—he has a right to cross examine this man on his testimony as to what he did, and if he walked off, he has a right to question him about that, that is what he was doing.

"Mr. Hardy: All right.

"The Court: Note your exception."

At the request of counsel for appellants, shortly after the foregoing colloquy the court specifically instructed the jury to disregard any comment made during the testimony of Mr. Platz, and stated that the court had not intended to indicate any view as to whether or not Platz had been diligent in the performance of his duties. In its general charge, the court again instructed the jury that comments by the court were not to be given evidentiary force.

■ In disposing of a contention similar to that of appellants, this Court recently held:

"Globe also complains that the District Judge made prejudicial remarks during the trial that called for a mistrial. A careful review of the record, especially the judge's explanation to the jury after the matter was called to his attention, shows that the judge exhibited no judicial partiality. He emphasized to the jury that he did not intend any comment made by him to be critical of Globe or any insurance company; that his comment was not intended as an expression of opinion about liability, and instructed the jury to disregard completely anything said by him. In the full context of what transpired we find no error."

Globe Life & Accident Ins. Co. v. Still, 5 Cir. 1967, 376 F.2d 611, 614–615. It is well-established that the conduct of a trial judge must be measured by a standard of fairness and impartiality.[3] He is not a mere moderator, however; and his duty is "to conduct an orderly trial and to make certain, as far as possible, that there is no misunderstanding of the testimony."[4] As this Court has noted, the trial judge "cannot be forced to occupy a passive position as moderator between the disputants." Patterson v. United States, 5 Cir. 1969, 413 F.2d 1001, 1003. In participating in the trial, the trial judge, however, may not give the jury his views upon ultimate issues of fact, Travelers Insurance Co. v. Ryan, 5 Cir. 1969, 416 F.2d 362, 364; nor take over the argument of one of the parties, United States v. Lanham, 5 Cir. 1969, 416 F.2d 1140, 1143.[5]

■ Here, the district judge in commenting on the testimony of Platz was not giving the jury his views upon an ultimate issue of fact. His remarks were aimed at the relevancy of this particular line of questioning. To avoid any doubt of prejudicial effect on the jury, the judge shortly thereafter instructed the jury that he had not intended to indicate any view as to whether Platz had been diligent in the performance of his duties, and later gave an additional cautionary instruction. We find no reversible error in any of the comments of the district judge.

### IV. and V.

■ When the jury initially returned and indicated that it had reached a verdict, the court concluded that the verdict was inconsistent. Before returning the jury for further deliberations, the court gave the now infamous "Allen" or "dynamite" charge, Appellants contend that the "Allen" charge[6] is applicable only where the jury is deadlocked and unable to reach a verdict, and thus that the "Allen" charge was tantamount to instructing the jury to change its answer on the interrogatory concerning appellants' negligence.

Initially, it should be pointed out that this Court has approved *sub silentio* the use of an "Allen" charge in a non-criminal case.[7] Although appellants have not challenged the wording of the "Allen" charge, recent decisions by this Court have approved the "Allen" charge only if "it makes clear to the jury that each member has a duty conscientiously to adhere to his own honest opinion and it avoids creating the impression that

3. Posey v. United States, 5 Cir. 1969, 416 F.2d 545, 555; Herman v. United States, 5 Cir. 1961, 289 F.2d 362, 365.

4. Posey v. United States, *supra*, 416 F.2d at 555; Kyle v. United States, 5 Cir. 1968, 402 F.2d 443, 444; *see* Union Carbide & Carbon Corp. v. Nisley, 10 Cir. 1962, 300 F.2d 561.

5. The only case relied on by appellants, Myers v. George, 8 Cir. 1959, 271 F.2d 168, involved numerous blatantly preju-

dicial and sarcastic remarks made by the trial judge. The comments did not constitute rulings on the admissibility of evidence but were voluntary and blatantly prejudicial in nature.

6. Allen v. United States, 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528.

7. Silverman v. Travelers Insurance Co., 5 Cir. 1960, 277 F.2d 257, 264; *see also* Orthopedic Equipment Co. v. Eutsler, 4 Cir. 1960, 276 F.2d 455, 463.

there is anything improper, questionable, or contrary to good conscience for a juror to create a mistrial."[8] Although the charge given in this case meets the first requirement, it is questionable whether or not it satisfies the second requirement. The charge, however, does compare favorably with "Allen" charges approved by this Court in two non-criminal cases.[9]

Neither party cites authority which supports or rejects appellants' contention that the "Allen" charge can properly be used only when the jury is deadlocked or "hung." Appellants rely on statements in Orthopedic Equipment Co. v. Eutsler, supra n. 7, at 276 F.2d 463, and Green v. United States, 5 Cir. 1962, 309 F.2d 852, that the "Allen" charge is designed to blast loose a deadlocked jury. However, neither case stands for the proposition that the "Allen" charge is improper when the jury is "confused" (and not deadlocked). In a decision by another circuit court, the use of an "Allen" charge even though the jury was not deadlocked (*i. e.*, the charge was given before the jury initially retired) was upheld.[10]

In *Kent*, Judge McGowan commented:

" * * * we point out that controversy about the *Allen* charge derives from the circumstance of its being given *after* the jury has been deliberating for some time and has failed to agree. We need not now speculate about its coercive effect in that type of case. Here it was given before the jury went out, and as part of the general instructing of the jury. Its coercive impact, if any, in this context surely cannot be equated with the degree of error for which an appellate court will reverse * * *."

343 F.2d at 261.

In like vein, Chief Judge Murrah of the Tenth Circuit has written:

" * * * we have said more than once that an instruction of this kind would be more 'appropriately influential and far less vulnerable to the charge of coercion' if given before the jury initially retires. Burroughs v. United States, 365 F.2d 431, 434 (10th Cir. 1966)."

United States v. Winn, 10 Cir. 1969, 411 F.2d 415, 416.[11] We find no reversible error in the giving of the "Allen" charge or in any of the other instructions criticized by the appellants.

## VI.

 In the light of the evidence as to the suffering, mental anguish, shock and injury to the nervous systems of Mr. and Mrs. Nordmann, we cannot hold the district court in error for failing to grant a motion for new trial or to require a remittitur of damages. Indeed, we agree with the appellees' counsel that the damages awarded were modest.

The judgment is

Affirmed.

8. Posey v. United States, supra, 416 F.2d at 552; Sanders v. United States, 5 Cir. 1969, 415 F.2d 621; Thaggard v. United States, 5 Cir. 1966, 354 F.2d 735, 739.

9. Silverman v. Travelers Insurance Co., supra n. 7, 277 F.2d at 264; Wilson v. Southern Farm Bureau Casualty Co., 5 Cir. 1960, 275 F.2d 819, 822–825.

10. Kent v. United States, 1965, 119 U.S. App.D.C. 378, 343 F.2d 247, 261, rev'd on other grounds, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

11. *Cf.* footnote 1 in Downs v. American Employers Insurance Co., 5 Cir. 1970, 423 F.2d 1160.