401 So.2d 1366 (1981)
Alfred E. REICHENBACH and Thia Reichenbach, Appellant,
v.
DAYS INN OF AMERICA, INC., and Sentry Indemnity Company, Appellees.
No. 80-300 & 80-603.
District Court of Appeal of Florida, Fifth District.
July 15, 1981.
Rehearing Denied August 18, 1981.
*1367 Thomas M. Burke of Rumberger, Kirk & Caldwell, Orlando, for appellants.
Mary Patricia C. Fawsett of Akerman, Senterfitt & Eidson, Orlando, for appellees.
FRANK D. UPCHURCH, Jr., Judge.
This is an appeal from a summary final judgment holding a motel not liable for an assault on one of its guests. We affirm.
Appellant, Alfred E. Reichenbach, was a guest at appellee's motel. At approximately 10:00 p.m., he parked his car in the parking lot and proceeded to step out of the car. At this point, an assailant came up and stated: "Don't do anything foolish." Reichenbach responded, "what" and was immediately shot twice. The assailant fled. The incident occurred so quickly that appellant could not identify or describe the assailant. A bus driver, the only eyewitness, was present with a charter group as a guest of the motel. Just before the shooting he had noticed a security guard making his rounds in the area where the event took place. Another employee was also patrolling. A few minutes after seeing the guard he saw a young, white male on the walkway. They greeted each other and he noticed "nothing unusual whatever" about the man and nothing to indicate he was armed. The bus driver walked upstairs onto the breezeway overlooking the parking lot. He then noticed appellant drive into the parking lot. As appellant got out of the car, the young man ran up to him, shot twice, ran to another car in the parking lot and left.
An innkeeper may be liable if he fails to take reasonable precautions to deter the type of criminal activity which resulted in a guest's injury. See Orlando Executive Park v. P.D.R., 402 So.2d 442 (Fla. 5th DCA 1981). In the case before us, there was no evidence that the innkeeper could have deterred or prevented appellant's injury by reasonable precautions which were not taken. There was no evidence that this incident was foreseeable or that the motel had any practical or reasonable method to protect its guest from or prevent this unprovoked hit and run attack.
AFFIRMED.
COBB, J., concurs.
COWART, J., concurs specially.
COWART, Judge, concurring specially:
I specially concur with the majority opinion but write to point up what I perceive as an aberration of existing tort principles.
A registered guest of a motel is entitled to receive from the innkeeper the degree of care owed a business invitee.[1] Generally, an innkeeper stands in such a special relation to guests that the innkeeper has a duty to take reasonable action to protect them against unreasonable risks of physical harm and this duty can include the obligation to exercise control over the conduct of third persons[2] and to prevent a third person from criminally assaulting a guest.[3]
*1368 The duty of an innkeeper to protect guests from the danger of a criminal assault by a third person presents an interesting problem relating to the concept of foreseeability. Appellants maintain that the location or particular character of a specific motel business, or past experience, should cause the innkeeper to reasonably anticipate that criminal assaults are likely to endanger the safety of guests.[4] It is contended that ability to generally foresee such danger creates a duty on the innkeeper to take affirmative action to deter persons intent on such wrongful conduct and to warn guests of prior criminal activity.[5] From these broad premises it is argued that a specific criminal assault on a guest by a third person was the proximate cause of, or resulted from, the failure of the innkeeper to meet this duty.
That motel guests will be criminally assaulted in the future is not only foreseeable  it is a certainty. This will occur not because innkeepers do not protect guests but because crime will continue and citizens generally will continue to be criminally assaulted and motel guests will be no exception. However, the general foreseeability of the risk of a criminal assault upon a guest by a third person only permits such precautionary measures as will deter crime generally. Employing security guards, and installing closed circuit video cameras and lights may deter crime generally, but can not reasonably be expected to prevent all crime or any one specific criminal act.[6] This is evident from the fact that, although society takes action to deter crime generally, law enforcement[7] rarely prevents a crime and then only when, by chance or by specific information relating to a threatened or planned crime, there is opportunity to take specific action to prevent a particular crime. Innkeepers should not be legally required to do that which organized society cannot do.[8] No reasonable standard of care *1369 should require one to be ever on guard, ever present, ready and able, to prevent an unforeseeable personal criminal attack upon another.[9] Although crime is foreseeable, generally an innkeeper, as well as others, may, under ordinary circumstances, reasonably assume that third persons will not violate the criminal law and will not intentionally cause harm to guests. Since the innkeeper is not an insurer of the guest's safety and is not liable, strictly or otherwise, for the acts of third persons,[10] he is under no duty to exercise any care to warn or to take preventive action[11] until he knows, or has reason to believe, that a third person is acting, or is about to act, in a manner as will, or is likely to, cause harm to a guest.[12] By their very nature assaults usually occur suddenly and without warning and without giving an opportunity to defend. Therefore, to prevent an assault by one person upon another requires an opportunity arising from some specific knowledge, notice or warning.[13]
Additionally, even where an innkeeper has reason to believe a third person is likely to assault a guest, an innkeeper's duty should be coextensive with his ability to meet that duty. This means the innkeeper should not be held responsible for an assault by a third party on a guest unless the innkeeper, acting reasonably, could have feasibly prevented it. There are severe limitations on the capability of anyone to prevent *1370 an assault on another person by a third party. First, it is in the nature of things that mobile or free moving objects are difficult to protect and secure. It is for this reason that more vehicles are stolen than other less mobile chattels and that valuable objects are kept in vaults, safety boxes and other various stationary places. Motel guests, like other free citizens, go and come at their pleasure. Also, persons intent on making a criminal assault, especially those not acting on impulse or merely upon an opportunity or perceived necessity, have the advantage of surprise and select the time, place, method and circumstances, rarely giving the victim, the police or an innkeeper an opportunity to prevent the particular assault.[14] Additionally, in earlier times innkeepers were required to accept the public generally but could with some impunity reject or eject persons considered disorderly, intoxicated, dangerous or undesirable. However, now in Florida, motels are not entirely free to exclude guests[15] or persons who visit guests[16] or other members of the public who come to use facilities and services which are customarily available to the public.[17] Thus, the character of a motel is essentially that of a public place and innkeepers lack the usual possessor's peculiar ability to exercise control over third persons using his property. This "open door policy" extends to all public areas and, while it impairs security, it is a necessary consequence of a free society and of motels and other public and semi-public places. Considering these circumstances, even when there is reason to be apprehensive of potential risk of harm to guests from an assault by a particular individual, the innkeeper must act reasonably and lawfully toward everyone, including third persons who may appear to be suspicious. Unless the circumstances not only give reasonable opportunity but also demand immediate action, when criminal acts are threatened the reasonable prudent present-day innkeeper can normally only call the police.[18]
Lastly, even if the innkeeper realizes, or should realize, that an assault is probable and circumstances do not permit police to be summoned, yet give the innkeeper a reasonable opportunity to act, the innkeeper should have a reasonable ability and method to prevent the assault before he is held liable for not doing so. An innkeeper who personally resorts to physical force risks harm to himself and legal consequences in the form of compensation and punitive damages. Even where physical force is justified, the innkeeper and his employees may not be able to physically restrain a strong, violent or dangerous third person. What if, as here, the assailant is armed? An unarmed innkeeper is no match for an armed assailant. If the innkeeper had been standing at alert beside Dr. Reichenbach when this assault with a firearm occurred, as a practical matter exactly what could the innkeeper have done to have protected his guest? There are no limitations on the assailant, but the innkeeper's right to arm himself is severely limited,[19] and there is great penalty if the legal restrictions are disregarded.[20]
*1371 This is not a case where an innkeeper[21] or an employee or other person within the control of the innkeeper[22] commits an assault on a guest. Nor does this case involve an innkeeper who neglected to take action after learning of the potential need of a particular guest for protection from some threatened harm.[23] Nor does this case involve a cause of action based on express or implied contract.[24] Neither does this case involve locking devices or other security measures relating to a private room which not only deter crime but, under some circumstances, might be capable of physically preventing access by members of the public generally, thereby preventing an assault.[25] This case involves an alleged neglect of a duty of the innkeeper to prevent a third person from doing intentional harm to a guest in a public area where there was only general knowledge of the possibility of criminal assault but nothing is claimed to have given the innkeeper foresight that a particular person might assault some guest or that a particular guest might be assaulted by someone.
In order for an innkeeper to be liable for breach of his duty to take affirmative action to protect guests from the unlawful assaults of third parties, I would require that specific facts be alleged and proved that would put a reasonable innkeeper on notice that a particular person was likely to assault some guest or that a particular guest was likely to be assaulted by some assailant and, also, specific facts would be required to detail circumstances that afforded the innkeeper a reasonable and feasible opportunity and ability to prevent the particular attack. I would hold here that an innkeeper is not responsible to a guest for a sudden violent criminal assault by a third person which occurred in a public area without warning and under circumstances giving the innkeeper no reason to anticipate the particular assault, no opportunity to act and no reasonable way to prevent it.
NOTES
[1] See Steinberg v. Irwin Operating Co., 90 So.2d 460 (Fla. 1956).
[2] W. Prosser, The Law of Torts, 349 n. 39 (4th Ed. 1971).
[3] Restatement (Second) of Torts § 314A(2) (1965).
[4] The motel in the instant case was undisputedly the location of prior criminal acts. Prior to this assault there had been one rape complaint, two armed robberies of motel guests in their rooms, two robberies of the gas station on the premises, and numerous instances of police response to complaints of unidentified activity in and around the motel. However, the innkeeper had no prior warning or notice that Dr. Reichenbach might be harmed or that the assailant might harm any guest.
[5] It is hard to envision just what type of warning would be appropriate. Must the prudent innkeeper maintain highway signs and placards at the registration desk warning potential customers that if they become guests of his motel they may be criminally assaulted by unknown third persons?
[6] To deter is to inhibit, to turn aside or to discourage and the success of efforts to deter depends on the person sought to be deterred. To prevent is to stop, to obstruct or to deprive another of the power to act regardless of his will or desire to act. The success of an effort to prevent depends largely on the opportunity, means and ability of the one who seeks to prevent an act or result. The difference in these terms illustrates the innkeeper's plight and the fallacy in the argument that a failure to deter criminal acts generally is evidence of the breach of a duty to prevent a threatened assault. Only law-abiding citizens and timid would-be offenders are deterred. Bold determined robbers, rapists, murderers, and other criminal assailants are not deterred and are rarely thwarted. As a practical matter their failures result from the inadequacy of their own abilities and efforts and not from the intervention of others. This unhappy truth should be obvious to all who are experienced in the criminal justice system, or who have contemplated the history of assassinations, or who observed Jack Ruby shoot Lee Harvey Oswald. Indeed, since the oral argument in this case, two staggering events have occurred. First, on March 30, 1981, a man attempted to assassinate President Ronald Reagan, possibly the most intensely protected individual in the United States. Barely a month and a half later, a similar assassination attempt was made on the life of Pope John Paul II. Although no one would contend these events resulted from the negligence of the property owner, it is interesting to note that President Reagan's assassination attempt occurred as he was exiting from a hotel, the entity involved in both this case and Orlando Executive Park v. P.D.R., 402 So.2d 442 (Fla. 5th DCA 1981).
[7] It should also be noted that, in the performance of its duties, law enforcement has certain immunities and rights to use force that citizens do not have.
[8] The Florida Crime Index released by the Florida Department of Law Enforcement on November 13, 1980, shows that violent assaultive crimes (murder, rape, robbery and aggravated assault) comprised 11.7 percent of all reported index offenses for the first nine months of 1980 and reflected a 28.9 percent increase over the same period in 1979. Certainly bank robbery is the one assaultive crime most easy to anticipate and to prevent, yet in the 10 years following the Bank Protection Act of 1968, bank robberies increased fourfold and last year reached 7,037 nationwide. Employees of motels, along with those of convenience stores and service stations, are themselves prime victims of robberies and other assaults.
[9] W. Prosser, The Law of Torts, 282 n. 97 (4th Ed. 1971).
[10] Perspective requires one to bear constantly in mind that the assaultive act of the criminal assailant is the legal efficient, or proximate cause of a victim's injuries. This is not a case where the assailant's acts and the innkeeper's acts join together to contribute to a guest's injuries. We are here only concerned with an innkeeper's duty to take steps to prevent an injury which he in no way affirmatively causes or to which he contributes.
[11] The argument will be made that the failure to impose liability on the innkeeper under the facts of this case will result in motels foregoing all precautions to protect their guests. I do not believe this will result. There is an economic incentive to provide general deterrent measures. With a growing concern for crime, a traveler will choose the safest accommodations available. In an industry peculiarly dependent upon goodwill, it is in an innkeeper's own interest to employ general deterrent measures to enhance its good name and reputation. Secondly, the innkeeper must be reasonably prepared to meet his duty to prevent assaults on guests when he has an adequate opportunity and it is reasonably possible for him to do so.
[12] See Restatement (Second) of Torts § 344, Comment f (1965).
[13] Generally, criminal acts have been found foreseeable, creating a duty to prevent them, only when a defendant with a duty knew or should have known that a specific person was likely to assault someone. See Sabatelli v. Omni International Hotels, Inc., 379 So.2d 444 (Fla. 3d DCA 1980); Angell v. F. Avanzini Lumber Co., 363 So.2d 571 (Fla. 2d DCA 1978); A Trysting Place, Inc. v. Kelly, 245 So.2d 875 (Fla. 3d DCA 1971); Sparks v. Ober, 192 So.2d 81 (Fla. 3d DCA 1966); Nance v. Ball, 134 So.2d 35 (Fla. 2d DCA 1961). Cf. Relyea v. State, 385 So.2d 1378 (Fla. 4th DCA 1980) (no liability was found when the wrongdoers were complete strangers to the landowner and to the victims, and where the incident occurred precipitously). In the absence of actual or constructive knowledge of the particular risk and a reasonable opportunity to protect from that harm by preventing the act, duties have not been imposed. See, e.g., Abblett v. The First Nat. Bank & Trust Co., 392 So.2d 331 (Fla. 4th DCA 1981) [1981 F.L.W. 169]; Drake v. Sun Bank & Trust Co. Inc., 377 So.2d 1013 (Fla. 2d DCA 1979); Gottschalk v. Smith, 334 So.2d 102 (Fla. 3d DCA), cert. denied, 341 So.2d 1085 (Fla. 1976); Nance v. James Archer Smith Hospital, 329 So.2d 377 (Fla. 3d DCA), cert. denied, 339 So.2d 1171 (Fla. 1976); Warner v. Fla. Jai Alai, 221 So.2d 777 (Fla. 4th DCA 1969), cert. denied, 235 So.2d 294 (Fla. 1970). Accord, Ellis v. Safeway Stores, Inc., 410 A.2d 1381 (D.C. 1979). See also Worth v. Stahl, 388 So.2d 340 (Fla. 4th DCA 1980) [1980 F.L.W. 1804] (holding that a tavernkeeper having no knowledge of the violent character of the patron who assaulted another patron had no duty to take action because he had inadequate notice of the need and an inadequate opportunity to act to prevent the harm).
[14] Man's best efforts to control a potential assailant are impotent. On July 16, 1980, Richard Sherman "Bush Ax" Williams, a Florida State Prison inmate, fatally stabbed a fellow inmate through the bars of his cell. Since then, Thomas Knight, a death row inmate, fatally stabbed his prison guard, Richard Burke.
[15] See § 509.092, Fla. Stat. (1979). See also Annot., 7 A.L.R. Fed. 450 (1971).
[16] "[B]y the very nature of the business, the operator of the hotel is bound to anticipate that a registered guest is apt to have business and social callers." Steinberg v. Irwin Operating Co., 90 So.2d 460, 461 (Fla. 1956).
[17] Restatement (Second) of Torts §§ 318, 866 (1965).
[18] This reasonable and proper action creates police reports suggesting criminal activity in the area which, as here, is used as evidence against the innkeeper.
[19] See § 790.25(3)(n), Fla. Stat. (1979); Brevard County v. Bagwell, 388 So.2d 645 (Fla. 5th DCA 1980).
[20] Herring v. State, 393 So.2d 67 (Fla. 5th DCA 1981).
[21] Of course in such event the innkeeper would be liable not for negligence but for the intentional tort.
[22] See Restatement (Second) of Torts § 302B, Comment e.D., Illustration 9, and § 317 (1965).
[23] See Restatement (Second) of Torts § 302B, Comment e.B., Illustration 4 (1965). See also Burnsed v. ABC Liquors, Inc., 393 So.2d 7 (Fla. 1st DCA 1980). Accord, Rahmel v. Lehndorff, 142 Cal. 681, 76 P. 659, 65 L.R.A. 88, (1904); Gurren v. Casperson, 147 Wash. 257, 265 P. 472 (1928).
[24] See Ten Associates v. McCutcheon, 398 So.2d 860 (Fla. 3d DCA 1981).
[25] See Whelan v. Dacoma Enterprises, Inc., 394 So.2d 506 (Fla. 5th DCA 1981); Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98 (Fla. 3d DCA 1980); Rosier v. Gainesville Inn's Association, Inc., 347 So.2d 1100 (Fla. 1st DCA 1977). Accord, Fortney v. Hotel Rancroft, 5 Ill. App.2d 327, 125 N.E.2d 544 (1955).