402 So.2d 442 (1981)
ORLANDO EXECUTIVE PARK, INC., and the Howard Johnson Company, Appellants/Cross Appellees,
v.
P.D.R., Appellee/Cross Appellant.
No. 79-1743/T4-706.
District Court of Appeal of Florida, Fifth District.
July 15, 1981.
Rehearing Denied August 11, 1981.
*444 Ronald M. Owen of Parker, Johnson, Owen & McGuire, Orlando, for appellant/cross appellee Orlando Executive Park, Inc.
Janet R. DeLaura of Smalbein, Eubank, Johnson, Rosier & Bussey, P.A., Rockledge, for appellant/cross appellee the Howard Johnson Co.
Charles R. Morgan of Morgan, Carratt & O'Connor, P.A., Fort Lauderdale, for appellee/cross appellant.
ORFINGER, Judge.
In an action for damages brought by appellee against the appellants, Orlando Executive Park, Inc. (OEP), and Howard Johnson Company (HJ), the jury returned a verdict for the appellee in the amount of $750,000 as compensatory damages against both defendants jointly, and awarded punitive damages in the amount of $500,000 against each defendant separately. Upon defendants' post-trial motions for directed verdict, the trial judge directed verdicts in favor of the defendants on the punitive damage claims, but denied a motion for new trial, remittitur or directed verdict on the claim for compensatory damages. The defendants have appealed the final judgment for compensatory damages, and the plaintiff has cross-appealed the order directing verdict on the punitive damage claim.
The factual circumstances giving rise to this litigation, viewed in the light most favorable to the plaintiff, follow: Plaintiff a 33 year-old married woman, and the mother of a small child, was employed as a supervisor for a restaurant chain. Her duties required that she travel occasionally to Orlando and because of the distance from her home, she stayed overnight in the Orlando area on those occasions.
On October 22, 1975, she was in Orlando performing the duties of her employment. She telephoned the Howard Johnson's Motor Lodge involved in this action at approximately 9:30 P.M. and made a room reservation.[1] Approximately ten minutes later she left the restaurant and drove directly to the motor lodge. When she arrived, she signed the registration form which had already been filled out by the desk clerk and was directed to her room which was located on the ground level in building "A", the first building behind the registration office. Plaintiff parked her car, went to her room and left her suitcase there. She then went back to her car to get some papers and when starting back to her room, she noticed a man standing in a walkway behind the registration office. Having reentered the building and while proceeding back along the interior hallway to her room, she was accosted by the man she had seen behind the registration office, who struck her very hard in the throat and on the back of her neck and then choked her until she became unconscious. When consciousness returned, plaintiff found herself lying on the floor of the hallway with her assailant sitting on top of her, grabbing her throat. Plaintiff was physically unable to speak and lapsed into an unconscious or semi-conscious state. Her assailant stripped her jewelry from her and then dragged her down the hallway to *445 a place beneath a secluded stairwell, where he kicked her and brutally forced her to perform an unnatural sex act. He then disappeared in the night and has never been identified.
Plaintiff's action for damages was based on her claim that defendants owed her the legal duty to exercise reasonable care for her safety while she was a guest on the premises. And she alleged that this duty had been breached by, inter alia, allowing the building to remain open and available to anyone who cared to enter, by failing to have adequate security on the premises either on the night in question or prior thereto so as to deter criminal activity against guests which had occurred before and which could foreseeably occur again, failing to install TV monitoring equipment in the public areas of the motel to deter criminal activity, failing to establish and enforce standards of operation at the lodge which would protect guests from physical attack and theft of property, and failure to warn plaintiff that there had been prior criminal activity on the premises and that such activity would or might constitute a threat to her safety on the premises.
There was evidence submitted tending to show serious physical and psychological injury as a result of this assault which was susceptible of the conclusion that within a year following the assault, plaintiff lost her job because of memory lapses, mental confusion and inability to tolerate and communicate with people. There was evidence from which the jury could conclude that this injury was permanent and that she would require expensive, long-term medical and psychiatric treatment, and that she had suffered a great loss in her earning capacity.
The motor lodge is a part of a large complex known as "Howard Johnson's Plaza" located just off Interstate 4. The complex includes a Howard Johnson's Restaurant, the Howard Johnson's Motor Lodge, a pub, an adult theater, and five office buildings. The motor lodge contains approximately three hundred guest rooms in six separate buildings, plus a registration office, and it was owned and operated by defendant Orlando Executive Park, Inc., under a license agreement with the parent company, Howard Johnson Company. The restaurant, the pub and the adult theater on the property were operated by the defendant, Howard Johnson Company. Approximately 75% of the Howard Johnson motor lodges throughout the country are owned and operated by licensees. The Howard Johnson Company never established any standards or procedures to be followed by licensees relating to the matter of guest security, although it has established such procedures for the lodges which it owns and operates. Each licensee handled that problem as it deemed best.
There was no regular security force at the motor lodge, nor were there other security devices such as TV monitors in hallways or other common areas. One security guard was employed from time to time, on a sporadic basis. For the six-month period prior to the incident in question, management of the motor lodge was aware of approximately thirty criminal incidents occurring on the premises. While most of these involved burglary, some of them involved direct attacks upon the guests. Following one of the attacks, approximately ten weeks prior to the incident in question, the motor lodge owners had hired a full-time security guard, but he was terminated a short time later. Anticipating high occupancy, one security guard had been employed for the evening in question commencing at 10:00 P.M. While it is not clear whether the attack occurred during the period this guard was on duty, the jury could have concluded that he was not on duty at the time, although he was on the premises becoming familiar with the layout because he had never been on the property before. Additionally, the evidence indicated that the guard had been employed to patrol the parking areas, and not the motor lodge buildings. The security service which provided the guards from time to time, had recommended the employment of two to three guards on a full-time basis. Plaintiff's security expert testified that three guards on staggered shifts would be necessary *446 to deter criminal activity, although he agreed that there were no industry standards for security guards and that it was impossible to say that the assault would not have occurred if three guards had been on the premises. He did, however, testify that in his opinion, a proper security force would serve as a deterrent to this type of activity and the chance of this happening would be slight.

I. LIABILITY OF ORLANDO EXECUTIVE PARK, INC.
It seems clear in Florida registered guests in a hotel or motel are business invitees to whom the hotel or motel owes a duty of reasonable care for their safety. Phillips Petroleum Company of Bartlesville, Oklahoma v. Dorn, 292 So.2d 429 (Fla. 4th DCA 1974). While recognizing this principle and conceding this duty, appellants say, nevertheless, that there is no evidence of a breach of their duty, since the injury to appellee was caused by the criminal act of a stranger, thus acting as an intervening efficient cause for which they are not responsible.
The evidence clearly shows numerous criminal activities on the premises in the six-month period immediately prior to this occurrence.[2] The testimony of a security expert produced by plaintiff indicated adequate security at this motor lodge required the presence of at least three full-time security guards. Thus the question becomes one of foreseeability. Could a jury, under the facts of this case reasonably conclude that the absence of adequate security would lead to the robbery and attack here?[3] Such is ordinarily a question for the jury. Rosier v. Gainesville Inns Associates, Ltd., 347 So.2d 1100 (Fla. 1st DCA 1977).
Several courts in similar or analagous situations have discussed the questions raised here. In Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98 (Fla.3d DCA 1980), the plaintiff's decedent was raped and murdered while a tenant in defendant's apartment complex. The crime was committed by an intruder, believed to be co-tenant. The basis of plaintiff's action against the landlord was its alleged negligent failure to provide reasonable security measures in the building's common areas. There, as here, the defendants argued that they were not responsible for the results of criminal conduct of third persons. In reversing a summary judgment for the defendant, the court said:
Particularly in view of the evidence concerning the past record, and therefore the future foreseeability of violent crime at its premises, a jury could properly find that a discharge of the landlord's duty to keep the common areas reasonably safe required that a guard or other security measures be provided at the complex, in order to prevent just such a tragic incident as the one involved in this case.
* * * * * *
Under our system, it is peculiarly a jury function to determine what precautions are reasonably required in the exercise of a particular duty of due care.
* * * * * *
We first reject, as entirely fallacious, the defendant's claim that the brutal and deliberate act of the rapist-murderer constituted an "independent intervening cause" *447 which served to insulate it from liability. It is well-established that if the reasonable possibility of the intervention, criminal or otherwise, of a third party is the avoidable risk of harm which itself causes one to be deemed negligent, the occurrence of that very conduct cannot be a superseding cause of a subsequent misadventure. As said in Restatement (Second) of Torts, § 449 (1965):
If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby. (emphasis supplied.)
* * * * * *

See also, W. Prosser, Torts, supra, § 44, at 275, nn. 20-21. The application of this principle to the case at bar is obvious. Since Mt. Zion is liable, if at all, for only failing to protect its tenant from a criminal attack, it cannot escape responsibility because the attack has actually taken place. (emphasis supplied).
Id. at 101. In a suit for damages arising out of a robbery and rape in a hotel room, the court, in Nordmann v. National Hotel Company, 425 F.2d 1103 (5th Cir.1970), summarized its holding thusly:
The evidence was ample to support the jury's verdict. For its twelve hundred rooms, and with a large ball in progress, the hotel had on duty at the time of the robbery and assault only one security officer, one room clerk and one bell boy. The jury could, with reason, determine that the defendants had failed to perform their general duty to protect their guests.
Id. at 1107.
Appellant continues, however, with its argument that there was no evidence that security was inadequate or more to the point, that any specific quantity of security guards or other measures would have prevented this robbery and attack. They say that since there are no standards for security in the motel industry, there is no way for a jury to determine the reasonableness (or unreasonableness) of any particular security measure. The absence of industry standards does not insulate the defendants from liability when there is credible evidence presented to the jury pointing to measures reasonably available to deter incidents of this kind, against which the jury can judge the reasonableness of the measures taken in this case.
Obviously, a six-unit, one building "Mom and Pop" motel will not have the same security problems as a large highrise thousand room hotel, or of a three hundred room motor lodge spread out over six buildings. Each presents a peculiar security problem of its own. How the means necessary to fulfill the duty of care varies with the peculiar circumstances of each case is explained by the Wisconsin Supreme Court in Peters v. Holiday Inns, Inc., 89 Wis.2d 115, 278 N.W.2d 208 (1979) in the following language which we approve:
Thus, in meeting its standard of ordinary care a hotel must provide security commensurate with the facts and circumstances that are or should be apparent to the ordinarily prudent person. In other words, an innkeeper's standard of care in providing security will vary according to the particular circumstances and location of the hotel.
Accordingly, as the degree of care that an innkeeper must exercise will vary in relation to the attendant circumstances, relevant factors in deciding whether a hotel has exercised ordinary care in providing adequate security are: industry standards, the community's crime rate, the extent of assaultive or criminal activity in the area or in similar business enterprises, the presence of suspicious persons, and the peculiar security problems posed by the hotel's design. A hotel's liability depends upon the danger to be apprehended and the presence or absence of security measures designed to meet the danger. The particular circumstances may require one or more of the following safety measures: a security force, closed circuit television surveillance, dead bolt *448 and chain locks on the individual rooms as well as security doors on hotel entranceways removed from the lobby area.
Id. at 212. See also Yamada v. Hilton Hotel Corporation, 60 Ill. App.3d 101, 17 Ill. Dec. 228, 376 N.E.2d 227 (1977).
The reference to these standards is not to be interpreted as an opinion of this court that the absence of any of the mentioned security measures will result in a finding of liability of the innkeeper, because this is not the test. We only intend to say that the jury may consider competent evidence on the need or effect of any of these security measures or combination thereof in the context of the circumstances and evidence before it, in determining whether the innkeeper has met his duty of providing his guest with reasonable protection for his safety.
Here, the jury had the right to consider that the size and layout of the complex, its various accessory uses and the apparent ease of entrance into the motel buildings, and could have concluded that these factors required some security measures. They could also conclude from the evidence that the type of activity within the complex increased the security risk and that no security was provided at the time of this attack.
And while appellant suggests plaintiff was required to show the attack would have been prevented had reasonable measures been taken, this is not the test. Causation, like any other element of plaintiff's case, need not be demonstrated by conclusive proof:
and it is enough that [plaintiff] introduces evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant, than that it was not. The fact of causation is incapable of mathematical proof, since no man can say with absolute certainty what would have occurred if the defendant had acted otherwise.
W. Prosser, Law of Torts, § 41 at 242 (4th Ed. 1977). Plaintiff adduced evidence that reasonable measures were not taken. Expert testimony, as well as reasonable inferences from the suggested measures, allowed a conclusion that the chance of this attack was "slight" had reasonable measures been taken. Thus the question of whether defendant's negligence was the proximate cause of plaintiff's injury was properly a jury question. See Helman v. Seaboard Coast Line Railroad Co., 349 So.2d 1187, 1189 (Fla. 1977); Yamada v. Hilton Hotel Corp., 17 Ill.Dec. at 233, 376 N.E.2d at 232.
Plaintiff also proved that the area under the stairwell where she was dragged was dark and secluded and was in itself a security hazard which should have been boarded up as had other similar stairwells in the motel. OEP management actively discouraged criminal investigations by sheriff's deputies, minimizing any deterrent effect they may have had. Thus, the totality of the circumstances presented a jury question regarding causation. See Rosier v. Gainesville Inns Assoc. Ltd.[4] It cannot be said that there was a complete absence of probative facts to support the jury's conclusion. See Yamada v. Hilton Hotel Corp., 17 Ill. Dec. at 233, 376 N.E.2d at 232.
Appellants rely on cases such as Worth v. Stahl, 388 So.2d 340 (Fla. 4th DCA 1980), Burnsed v. ABC Liquors, Inc., 393 So.2d 7 (Fla. 1st DCA 1980) and Relyea v. State, 385 So.2d 1378 (Fla. 4th DCA 1980), but they are all distinguishable. In Worth, unlike the case sub judice, there was no proof that the violent acts were foreseeable. Burnsed was a per curiam decision with no opinion. The dissent gives us a clue as to the facts, but no insight into the reasons for *449 the majority opinion. From the facts in the dissent, the case could very well have turned on the issue of foreseeability and proximate cause. Likewise, Relyea turned on the absence of proof that any prior, similar criminal acts had ever occurred on the campus so as to create an issue as to the foreseeability of the attack in question. Thus, these cases are all inapposite.
Appellants next contend that the verdict for compensatory damages is excessive and that the trial court erred in not granting its motion for remittitur. Where the trial court denies a motion for remittitur, this strengthens the presumption of correctness of the jury verdict and the trial court can be reversed on appeal only for an abuse of discretion. Lassitter v. International Union of Operating Engineers, 349 So.2d 622 (Fla. 1977). When ordering a remittitur, the amount of excess must be clearly determinable from facts in the record, Wackenhut Corp. v. Canty, 359 So.2d 430, 434 (Fla. 1978), or there must be an apparently high verdict coupled with extrinsic evidence of improper influence. Lassitter. Here, there was evidence that substantial future medical expenses would be incurred, there was testimony that plaintiff's future loss of earnings could be in excess of $600,000, which, coupled with evidence of the injury itself and plaintiff's pain and mental anguish, supports the jury's verdict. There is no showing that the award exceeds the maximum limit of the reasonable range within which a jury may operate. Bould v. Touchette, 349 So.2d 1181 (Fla. 1977).

II. LIABILITY OF HOWARD JOHNSON COMPANY
Appellant Howard Johnson Company contends that the trial court erred in not granting its motion for directed verdict. Appellee proceeded against this appellant on the theory of apparent agency. Appellant argues strongly that the evidence fails to show any control or right of control by HJ over the operation of the motel, but while this argument may be relevant to a claim of actual agency, it has no relevance to the theory of apparent agency. Appellee sought damages against HJ solely on the apparent agency doctrine, and the jury was so instructed.
The doctrine of apparent agency, sometimes referred to as agency by estoppel, consists of three primary elements: (1) a representation by the principal; (2) reliance on that representation by a third person; and (3) a change of position by the third person in reliance upon such representation to his detriment. The principal is estopped to deny the authority of the agent, because he has permitted the appearance of authority in the agent and thereby justified the third party in relying on that appearance of authority as though it were actually conferred upon the agent. 2 Fla.Jur.2d, Agency and Employment, sec. 36 (1977).[5] Put another way,
Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act, and therefore deals with the agent, the principal is estopped, as against such third person, from denying the agent's authority.
T.G. Bush Grocery Co. v. Conely, 61 Fla. 131, 55 So. 867, 869 (1911); Hertz International, Ltd. v. Richardson, 317 So.2d 824, 827, (Fla.3d DCA 1975).
HJ attacks the verdict of the jury by arguing that (1) there was insufficient evidence of representations by it, and (2) there was insufficient evidence of reliance by plaintiff. We will address both issues.
Appellant asserts that the only representations of HJ to be considered are the sign announcing the lodge as a "Howard Johnson's," and the distinctive color scheme. Appellant correctly points out that gas station *450 signs alone do not make a gas station operator a general agent of the oil company. Cawthon v. Phillips Petroleum Co., 124 So.2d 517 (Fla.2d DCA 1960). The reason for this is that it is common knowledge that gas station operators are independent contractors, and "these signs and emblems represent no more than notice to a motorist that a given company's products are being marketed at the station." Coe v. Esau, 377 P.2d 815 (Okl. 1963); accord, Cawthon v. Phillips Petroleum Co.. Thus, the "representation" made by service station signs is only that a certain kind of gasoline is sold, not that the operator is an agent for the oil company with respect to any standard of service,[6] car repair,[7] or maintenance of premises.[8] In Cawthon, Phillips' advertisements (for products sold at "Phillips" gasoline stations) did not subject Phillips to liability for a station operator's negligent brake repair, because
There appeared in the advertisement no statement that mechanical or repair services were solicited or offered by the oil company or its employees or agents; neither did the advertisement indicate agency.
124 So.2d at 521.
While OEP might not be HJ's agent for all purposes, the signs, national advertising, uniformity of building design and color schemes allows the public to assume that this and other similar motor lodges are under the same ownership.[9] A HJ official testified that it was the HJ marketing strategy to appear as a "chain that sells a product across the nation." Additionally, the license agreement between HJ and OEP clearly gives HJ the right to control the architectural design and the "standards of operation and service ... and the licensee agrees at all times to conform to such standards."[10]
Florida has adopted section 267 of the Restatement (Second) of Agency (1958), which says:
One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of one appearing to be a servant or other agent as if he were such.
See Mercury Cab Owners Association v. Jones, 79 So.2d 782 (Fla. 1955).
There was sufficient evidence for the jury to reasonably conclude that HJ represented to the traveling public that it could expect a particular level of service at a Howard Johnson Motor Lodge. The uniformity of signs, design and color scheme easily leads the public to believe that each motor lodge is under common ownership or conforms to common standards, and the jury could find they are intended to do so.[11] See Sapp v. City of Tallahassee, 348 So.2d 363 *451 (Fla. 1st DCA 1977); Wood v. Holiday Inns, Inc., 508 F.2d 167 (5th Cir.1975); Drexel v. Union Prescription Center, Inc., 582 F.2d 781 (3d Cir.1978).
On the question of reliance, the jury had a right to conclude that appellee believed exactly what appellant wanted her to believe, i.e., that she was dealing with Howard Johnson's, "a chain that sells a product across the nation." Appellee testified that when she realized her need for a room, she called the Howard Johnson Motor Lodge. She had stayed there once before. Thus, she was calling a specifically identified establishment, not just any motel. She also testified that she was not aware that any of the HJ motels were individually owned, but assumed "they were Howard Johnson's". While more could have been presented, we believe that this, coupled with the evidence of the extensive efforts of HJ to market a uniform product, presented an issue to the jury on the question of reliance which they obviously resolved in appellee's favor. In Economy Cabs v. Kirkland, 127 Fla. 867, 174 So. 222 (1937), a passenger in a taxicab was injured and sued the company whose name was carried on the cab. The passenger had telephoned this company, and a cab bearing the colors and insignia of the company responded. The suit was defended on the ground that this taxicab, like some others, was in reality owned and operated by a third party, hence the company was not liable. Justice Terrell, in speaking for the court, said:
Under such state of facts the law will presume as to the public generally and the plaintiff that defendant cab and driver were a common carrier for hire and in the service of the company whose name it bore. One of the first principles of hornbook law we were taught in the law school was that for every wrong the law provides a remedy. If the law is to be circumvented by litigants as proposed here, then we were taught a futile lesson. They should not be permitted to parade under a flag of truce to garner a profit and then raise the black flag when called on to make restitution for damage perpetrated. (emphasis added).
* * * * * *
Third parties who happen to own a cab and use it in the name of the company at the call of the company and under the colors of the company will be treated as the company.
* * * * * *
174 So. at 224. See also, Sapp v. City of Tallahassee, supra.
Appellant's remaining points on appeal have been considered and are without merit.
Appellee cross appeals the action of the trial court in granting appellant's motion to set aside the punitive damage award. The trial court found that the evidence and reasonable inferences thereon, viewed in the light most favorable to appellee, were insufficient to support the award of punitive damages against either defendant. We do not find the conduct of defendants to be of such egregious nature as to support a punitive damage award. See Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936); A-T-O, Inc. v. Garcia, 374 So.2d 533 (Fla. 3d DCA 1979).
The judgment appealed from is AFFIRMED.
FRANK D. UPCHURCH, Jr., J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
The majority opinion effectively imposes a form of strict liability upon landowners and businesses. It is axiomatic that a person's duty should not be greater than his ability to meet that duty. Security measures in businesses and homes may increase a potential assailant's perception of his risk of apprehension and thereby discourage or deter some persons sometimes; however, they do not, and cannot, prevent a particular assault made without warning by a determined assailant in an area commonly open to the public. Therefore, any duty of care should be likewise limited. By imposing liability for failing to take reasonable security precautions without requiring that *452 the assault would have been (not might have been) prevented by taking those precautions, the majority has effectively eliminated any real requirement of proximate cause and foreseeability in actions of this type.
The majority opinion is applicable far beyond the facts of this case. Since all landowners owe a general duty of care to their invitees, the existence of prior criminal activity of an assaultive nature on their property, or in the area, under the majority view, makes a similar assault on every invitee reasonably foreseeable and thereby subjects every landowner to liability if "reasonable precautions" were not taken regardless of whether the precautions would have prevented the assault. Simple justice is for the assault victim to be paid; for the assailant to pay; and for the innkeeper to not have to pay. To hold landowners, lessees and franchisors liable for injuries which they did not have the opportunity or power to prevent in the hope that society generally will benefit from frantic but futile attempts to buy "security" to meet this impossible duty goes beyond mere fallacy and is both legally and morally wrong. See the special concurring opinion in Reichenbach v. Days Inn, Inc., 401 So.2d 1366 (Fla. 5th DCA 1981).[1]
NOTES
[1] She had stayed at this same motor lodge approximately one week earlier. Arrangements had been made for the billing of her room charges directly to her employer.
[2] Although aware of a formal request by plaintiff's attorneys to produce records of criminal incidents pre-dating this six-month period, after the trial court ordered production of these records, defendant's agent admitted that she had ordered them to be destroyed. The court instructed the jury that they could infer from this action that the evidence suppressed would have been unfavorable to the party who destroyed it. While appellants appeal the giving of this instruction, we do not consider this point because it was not properly preserved for review.
[3] This question, one of causation, should be distinguished from a plaintiff's initial burden of demonstrating a duty to take reasonable measures against foreseeable criminal activity. If the criminal activity is not foreseeable, no duty arises. See Relyea v. State, 385 So.2d 1378 (Fla. 4th DCA 1980). Defendants in this case stipulated that they were on notice of criminal activity, admitting the duty to take reasonable measures against this type of attack.
[4] In agreeing that a jury question was presented on the security issue, the court re-stated the traditional rule on intervening cause:

While the question of proximate cause in a negligence action is one for the court where there is an active and efficient intervening cause, Nance v. James Archer Smith Hospital, Inc., 329 So.2d 377 (Fla.3d DCA 1976), still if such intervening cause is either foreseeable or might reasonably have been foreseen by the defendant, his negligence may be considered the proximate cause of the injury notwithstanding the intervening cause.
347 So.2d at 1102.
[5] It is important to note that the doctrine rests on appearances created by the principal rather than on appearances created by the agent. Owen Industries, Inc., v. Taylor, 354 So.2d 1259 (Fla.2d DCA 1978).
[6] B.P. Oil Corp. v. Mabe, 279 Md. 632, 370 A.2d 554 (1977) (operator negligently fills radiator).
[7] Crittendon v. State Oil Co., 78 Ill. App.2d 112, 222 N.E.2d 561 (1966) (signs might allow belief that "State Oil" products are sold, but do not warrant assumption that station operator was agent in repairing and driving plaintiff's car).
[8] Apple v. Standard Oil, Div. of American Oil Co., 307 F. Supp. 107 (N.D.Cal. 1969) (American Oil not liable when station operator's dog bites plaintiff).
[9] Even in service station cases some courts have found the existence of apparent agency where the representations involved more than advertising the product being sold, as e.g., Gizzi v. Texaco, Inc., 437 F.2d 308 (3d Cir.1971), dealing with Texaco's "you can trust your car to the man who wears the star" slogan.
[10] The agreement also provides that in the event of termination, licensee will discontinue use of signs and other indicia of operation as a Howard Johnson Motor Lodge and will discontinue use of the color scheme and remove the cupola and all orange tile from the buildings or structures "effectively to distinguish the same from its former appearance as a designation of a `Howard Johnson's Motor Lodge'... ."
[11] A vice president of HJ testified:

Q. Well, do you consider the Howard Johnson name to be a valuable name?
A. Yes, we do.
Q. Do you consider the name to imply cleanliness and safety and all of those good things?
A. Yes, we do. (R-893). (emphasis supplied)
[1] I find this case factually indistinguishable from the situation presented in Reichenbach where this court held precautions taken by the motel were as a matter of law sufficient to avoid liability. Both cases involve a motel's liability for the result of criminal conduct of an assaultive nature by unknown third persons; both motels had been the location of prior similar criminal activity, both motels had one security guard on the premises at the time of the assault and neither motel had taken any other significant security measures (i.e. TV monitors).