Jane DOE, Plaintiff-Appellee,
Cross-Appellant,

v.

UNITED STATES of America, Defend-
ant-Appellant, Cross-Appellee.

No. 82–5578.

United States Court of Appeals,
Eleventh Circuit.

Nov. 3, 1983.

Stanley Marcus, U.S. Atty., Miami, Fla., Eloise E. Davies, Civ. Div., Appellate Section, U.S. Dept. of Justice, Washington, D.C., for defendant-appellant, cross-appellee.

Philip M. Gerson, P.A., Miami, Fla., for plaintiff-appellee, cross-appellant.

Before KRAVITCH and JOHNSON, Circuit Judges, and LYNNE,* District Judge.

LYNNE, District Judge:

This is an appeal from an award of damages made pursuant to a finding that plaintiff-appellee, Jane Doe, had been injured by the negligence of defendant-appellant, the United States. The District Court, 533 F.Supp. 245, found that the Government owed a duty of care to plaintiff, that it breached such duty, that plaintiff's injuries were proximately caused by its negligence, and that plaintiff could maintain her action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–2678, 2680 (the Act). We reverse.

On Sunday, June 24, 1979, plaintiff, twenty-four years of age, a resident of North Miami Beach, returned to her home from Catholic Mass at approximately 7:30 p.m. After addressing invitations which she planned to mail that evening, she rode her bicycle to the nearby 163rd Street Shopping Center where she purchased stamps. To ensure that her invitations would go out in the next morning's mail, she proceeded to the North Miami Beach Post Office, arriving there at approximately 8:15 p.m. When she entered the lobby and approached the desk toward its rear she encountered an adult male patron who was leaving the building.

Plaintiff saw another adult male, a stranger, open the door and peer into the lobby area. He then entered and brutally raped her. She subsequently escaped from her assailant and, battered and wearing shredded clothing, rode home. She reported the incident to the police and then went to the Rape Treatment Center at Jackson Memorial Hospital where she was treated and released.

The North Miami Beach Post Office, leased by the Government from private individuals, is a one-story concrete block and stucco structure located on the corner of two intersecting streets. It is divided by two glass doors, bordering on the street, into two main areas, a service section and a lobby which houses rental lockboxes. The lobby area is lit by overhead lights. Its windows begin some six feet above the floor. One set of double doors opens onto the sidewalk, providing the only access to and from the street when the service area is closed. One must open these doors to see inside from the street.

The lobby itself is rectangular. Lockboxes are located on the wall directly across from the double doors to the street and on the adjacent wall, directly opposite the wall containing the doors to the service area. The desk at which plaintiff was stamping her invitations when she was attacked is located near the end of the lobby, against the wall containing the double doors to the street.

The schedule observed by the post office on June 24, 1979, which had existed for many months prior thereto, required the closing of the service area at 5:00 p.m. on Monday through Friday, at 12:00 noon on Saturday, and all day on Sunday, whereas the rental lockbox area was continuously open to the public. Postal employees were infrequently on the premises when the ser-

---

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

vice area was closed, and none were present on the day of the rape.[1]

■ Initially, we consider arguments of counsel for the respective parties persistently urged upon the lower court and renewed here. Positing her action upon the provisions of § 1346(b) of the Act,[2] plaintiff asserts that the violation by defendant's employees of two extant regulations of the United States Postal Service[3] constituted negligence per se. We disagree and recognize that the court below did not go that far. Aside from their obvious vagueness and overbreadth, we have held that such internal regulations do not have the force of law and that violation thereof will not support a determination of negligence per se. *Tringali Bros. v. United States,* 630 F.2d 1089 (5th Cir.1980).

■ For its part, defendant insists that the facts of this case bring it squarely within the exception provided by § 2680 of the Act.[4] In its trilogy of *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), and *Rayonier, Inc. v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957), the Supreme Court has considered the impact of the discretionary function upon the scope of § 1346(b) of the Act.

In *Dalehite,* the seminal case in this area, the Court stated:

It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications, or schedules of operations.

346 U.S. at 35, 73 S.Ct. at 968. Neither *Indian Towing* nor *Rayonier* appears to retreat from this principle. They do, however, substantially erode the additional

1. On March 2 and 3, 1979, the post office conducted a survey as the result of several lockbox breakins to determine whether the postal service should continue leaving the lockbox open 24 hours a day. Based on the survey, a post office administrator recommended that the hours be shortened to 5:00 a.m., to 8:00 p.m., on Monday through Saturday, and to 8:30 a.m., to 1:00 p.m., on Sunday. The post office administrator received permission to implement the recommended changes at sometime prior to June 24, 1979. It appears, however, that such proposed changes were apparently implemented on the day after the rape occurred.

2. The Act provides that the federal district courts, subject to the provisions of the Act, are to have:

exclusive jurisdiction of civil actions on claims against the United States for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. § 1346(b).

3. One regulation provides that:

No job shall be considered efficiently completed unless the employee has followed every reasonable precaution and safety rule to protect himself, his fellow employees and the public.
Supervisor's Safety Handbook, Personnel Series P–13 issued February 28, 1974.
A second regulation states that:
Normally, separate lockbox lobbies should remain open when someone is on duty in the postal unit. At the postmaster's discretion, lobbies may remain open when no one is on duty to allow customer access to lockboxes and self-service equipment, provided customer safety, security provisions and police protection are deemed adequate.
Postal Operations Manual §§ 221–223 (1979).

4. Section 2680 reads:
The provisions of this chapter and section 1346(b) of this title shall not apply to—
(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

statement in *Dalehite* immediately following the above:

> Where there is room for policy, judgment and decision, there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.

346 U.S. at 36, 73 S.Ct. at 968. *See Pigott v. United States,* 451 F.2d 574 (5th Cir. 1971).

It is not our task to explore the limits of discretion to which the exception applies. In our opinion, the decisions of the postal authorities to locate a post office in North Miami Beach and to schedule its operations for serving its local patrons were discretionary functions and in the absence of other facts could not form a basis for suit under the Act. But it was the presence of additional facts upon which the plaintiff relied and to which we now turn.

■ Concededly, plaintiff was a business invitee upon defendant's premises. It is the general rule, a crystalization of common sense, that an owner of premises has no duty to protect such a person from criminal attack and will not be held responsible for the willful criminal act of a third person

which could not be foreseen or anticipated. 62 Am.Jur.2d *Premises Liability* § 200 (1972). Florida adheres to this rule, *Relyea v. State,* 385 So.2d 1378, 1383 (Fla.App. 1980) [5] and it is to the law of that jurisdiction that we must look in measuring the liability of the defendant. § 1346(b) of the Act.

■ Foreseeability is a question of fact. *See, e.g., Gibson v. Avis Rent-A-Car System, Inc.,* 386 So.2d 520 (Fla.1980); [6] *Orlando Executive Park, Inc. v. P.D.R.,* 402 So.2d 442, 446 (Fla.App.1981). The lower court explicitly found "that the type of criminal acts to which the plaintiff fell prey were foreseeable" (sic). This finding of ultimate fact is protected by the clearly erroneous standard of Rule 52(a), F.R.C.P., and we are forbidden to substitute our interpretation of the evidence for that of the trial court. *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 102 S.Ct. 2182, 2190, 72 L.Ed.2d 606 (1982). We do no more than test the sufficiency of its subsidiary factual underpinnings.

It is settled that a finding is clearly erroneous within the meaning of Rule 52(a)

---

**5.** *See also Medina v. 187th St. Apts., Ltd.,* 405 So.2d 485 (Fla.App.1981) (plaintiff, an invitee upon the premises of an apartment complex, was mugged in defendant's parking lot); *Orlando Executive Park, Inc. v. P.D.R.,* 402 So.2d 442 (Fla.App.1981) (plaintiff, a guest in Howard Johnson's Motor Lodge, was brutally assaulted by an unknown assailant); *Drake v. Sun Bank & Trust Co., etc.,* 400 So.2d 569 (Fla.App.1981) (customer abducted from bank's parking lot and murdered); *Highlands Insurance Co. v. Gilday,* 398 So.2d 834 (Fla.App.1981) (business invitee assaulted by stranger in hotel men's room); *Worth v. Stahl,* 388 So.2d 340 (Fla.App. 1980) (patron assaulted in tavern); *Fernandez v. Miami Jai-Alai, Inc.,* 386 So.2d 4 (Fla.App. 1980) (patron assaulted and stabbed while watching jaialai games from parking lot).

**6.** In discussing reliance upon an efficient intervening cause to insulate an initial actor from liability the Supreme Court of Florida held that if such intervening cause was foreseeable the original negligent actor may still be held liable. While the court did not undertake the impossible task of formulating a litmus test for foreseeability, it observed:

> Another way of stating the question whether the intervening cause was foreseeable is to ask whether the harm that occurred was within the scope of the danger attributable to the defendant's negligent conduct. A person who creates a dangerous situation may be deemed negligent because he violates a duty of care. The dangerous situation so created may result in a particular type of harm. The question whether the harm that occurs was within the scope of the risk created by the defendant's conduct may be answered in a number of ways.
>
> First, the legislature may specify the type of harm for which a tortfeasor is liable. Second, it may be shown that the particular defendant had actual knowledge that the same type of harm has resulted in the past from the same type of negligent conduct. Finally, there is the type of harm that has so frequently resulted from the same type of negligence that " 'in the field of human experience' the same type of result may be expected again."

*Gibson v. Avis Rent-A-Car System, Inc.,* 386 So.2d 520, 522 (Fla.1980) (citations omitted).

when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). We consider the validity of the district court's above-quoted finding to be the pivotal issue on this appeal and have undertaken a painstaking review of the record evidence.

■ Prior to June 24, 1979, there had never been a crime against the person committed upon the premises of the post office or in its immediate vicinity.[7] In a two year period preceding the rape the only incidents reported at the post office with criminal overtones did not involve actual or threatened injury to invitees.[8] Over the timely objection of defendant as to relevancy, the Court admitted into evidence crime statistics compiled by the North Miami Beach Police Department to support her contention that the post office was located in a high crime area.[9]

Thereupon, defendant attempted to call Chief Whitaker of the North Miami Beach Police Department and proffered his testimony that although some areas of North Miami Beach are crime ridden, the post office area is not one of them; that the post office was located in a low crime area. In excluding such testimony the district judge abused his discretion and for that reason alone reversal would be required. In his deposition, Robert Weaver, a postal inspector from February 21, 1958, until August 1980, whose duties were performed at the

North Miami Beach Post Office from time to time since 1960, testified that from his standpoint such post office was not considered to be in a high crime area. Evidence of his opinion obviously did not render cumulative the proffered testimony of Chief Whitaker analyzing the very crime statistics, compiled by his department, upon which plaintiff relied.

■ We find persuasive the opinion of the District Court of Appeals of Florida, Fourth District, in *Relyea v. State,* 385 So.2d 1378 (Fla.App.1980). The court firmly declared the Florida rule as to premises liability to be:

In order to impose a duty upon a landowner to protect an invitee from criminal acts of a third person a plaintiff, invitee, must allege and prove that the landowner had actual or constructive knowledge of prior, *similar* criminal acts committed upon invitees. The landowner is not bound to anticipate criminal activities of third persons where, as here, the wrongdoers were complete strangers to the landowner and to the victims, and where the incident occurred precipitously. (citations omitted). Appellants simply failed to allege or prove that any prior assaults upon persons had been committed in the area of the abduction and murder, or for that matter, anywhere on the campus. In fact, the proof showed there had not been one serious crime against the person since the school was founded in 1963. The reported incidents involved minor larcenies from automobiles and school buildings, hit and run complaints for minor automobile damage, and miscellane-

7. The post office had occupied the premises at 16400 West Dixie Highway, North Miami Beach, since at least 1960.

8. As her Exhibit 8, plaintiff offered in evidence fifteen Offense-Incident Reports of the Public Safety Department, Dade County, Florida. Apart from the incident involved herein, they relate to three incidents of breaking into postal boxes (ascribed by postal inspectors to juveniles in an effort to steal mail), to acts of vandalism involving the breaking of glass doors and windows by rocks and BB guns, to the attempt of a juvenile to steal a bicycle, to the attempted theft of a battery from a postal vehi-

cle, and to a disturbance caused by a customer complaining of late mail delivery.

9. For the purpose of compiling crime statistics, the approximately 4½ square mile of North Miami Beach was divided by the police department into four grids, each containing approximately one square mile. The department denoted serious crimes, such as murder, rape, and robbery, as Part I crimes. In the years 1977 and 1978, 865 Part I crimes were reported for Grid No. 340 in which the post office is located. Of these crimes, 19 were rapes, 8 homicides, 176 robberies, 195 aggravated assaults, and 367 simple assaults.

ous incidents such as malicious mischief. These facts do not give rise to the foreseeability of violent assaults which, in turn, may give rise to a duty to protect. *Id.* at 1383.

Later, the same court, quoting the foregoing, in *Highlands Ins. Co. v. Gilday,* 398 So.2d 834 (Fla.App.1981), held that, where only non-assaultive criminal incidents involving the defendant hotel had been reported, evidence of the crime statistics for a period of twenty months (including serious crimes against the person) for the zone (approximately three miles long and one-half mile wide) in which the hotel was located, was not probative of notice to the hotel that there was a necessity to protect its guests against criminal attacks. Indeed, that court held that the trial court erred in admitting such crime statistics.[10] We do not predicate error upon the reception of evidence of similar criminal acts in the one square mile area in which the post office was located. Rather, we hold that such evidence, undifferentiated with respect to the proximity of such acts to the post office is insufficient to support a finding of the foreseeability of plaintiff's tragic injury. A thorough review of the entire evidence leaves us with the definite and firm conviction that the ultimate conclusion of the district court that plaintiff's injuries were proximately caused by defendant's negligence is clearly erroneous. We therefore reverse the judgment below in favor of plaintiff and direct the entry of a judgment for defendant.

Our disposition of the direct appeal renders inappropriate discussion of plaintiff's cross-appeal based upon her contention that the damages awarded by the district court were grossly inadequate.

REVERSED and REMANDED with direction.

---

10. The Florida Supreme Court has never addressed the precise issue with which we are confronted. In the absence of a decision from the state's highest court, "we must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise." *Flintkote Co. v. Dravo Corp.,* 678 F.2d 942, 945 (11th Cir.1982); *King v. Guardian Life Ins. Co. of America,* 686 F.2d 894, 898 (11th Cir.1982). We find no indication in any of its reported opinions that the Florida Supreme Court would decide the issue sub judice otherwise.