Betty Jean RICH, Individually and as Administratrix of the Estate of John Barry Rich, Deceased and as Executrix of the Estate of Johnny N. Rich, Deceased, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 96–6180.

United States Court of Appeals, Sixth Circuit.

Argued June 12, 1997.

Decided July 22, 1997.

Kurt W. Maier (argued and briefed), Jason P. Wright (briefed), English, Lucas, Priest & Owsley, Bowling Green, KY, for Plaintiff–Appellant.

Kathryn S. Firsching (argued and briefed), U.S. Army Corps of Engineers, Nashville, TN, James H. Barr (briefed), Office of the U.S. Attorney, Louisville, KY, for Defendant–Appellee.

Before: KENNEDY, GUY, and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Plaintiff–Appellant Betty Jean Rich, individually and as Administratrix of the Estate of John Barry Rich, and Executrix of the Estate of Johnny N. Rich, appeals from the district court order granting summary judgment in favor of Defendant–Appellee United States of America in this action based on the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (1992) (FTCA). The district court determined that the actions of the United States Army Corps of Engineers ("Corps") relating to the deaths of Mrs. Rich's husband and son were protected by the discretionary function exception to the FTCA. Accordingly, the district court held that under *Feyers v. United States,* 749 F.2d 1222 (6th Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985), it was without subject matter jurisdiction. We affirm.

### I

The facts of the incident are undisputed. On the morning of April 24, 1993, Johnny N. Rich and his son, John Barry Rich, were killed when their pickup truck went over the side of the bridge abutment leading to the Wolf Creek Dam at Lake Cumberland, Kentucky, on U.S. Highway 127. The road was slick from an early-morning rain, and their truck was unable to make the 90–degree turn at the bottom of a steady 25–degree downgrade. The truck jumped a curb and went through the barrier at the south end, falling to the bottom of the dam before bursting into flames. The boat and trailer remained on the highway above. Both of the men died at the scene as a result of injuries sustained in the accident. Joint Appendix (J.A.) at 57 (Kentucky State Police Report, 4/24/93).

The area where the accident occurred is administered and maintained by both the Corps and the Commonwealth of Kentucky. The dam is owned by the United States, but the roads, originally designed by the Corps, were later conveyed to and are now owned and maintained by Kentucky. J.A. at 60–61 (Easement ¶ 1); J.A. at 87–90 (Quitclaim Deed). Part of the conveyance included an easement which states "the United States shall not be responsible for damages to property or injuries to persons which may arise from or be incident to the construction, maintenance, and use of said road." J.A. at 62 (Easement ¶ 11). Although the United States retained responsibility for the maintenance and upkeep of the roadway over the concrete portion of the dam, it does not maintain the 90–degree curve. The 90–degree curve is part of the portion of the road maintained by Kentucky, and Kentucky is responsible for traffic control devices warning of the approach of the curve. J.A. at 62 (Easement ¶¶ 14–15). The road had flashing lights, arrow signs, and speed limit warnings leading down to the dam. *See* Appellant's Br. at 30.

There have been a number of accidents over the years in the area around the dam. Following an accident on February 12, 1993, the Corps replaced approximately 30 feet of guardrailing. The railing, and two steel posts, were damaged when Nelson Horst lost control of his truck traveling down the same section of road as the Riches. J.A. at 213 (Monthly Operating and Maintenance Summary, February 1993). A new guardrail was in place by the time of the Rich accident, constructed using the same design as the guardrail which gave way to the Horst vehicle. The Rich vehicle broke through the replacement railing a little over a month later. *See* Appellant's Br. at 11.

Rich instituted this suit in the U.S. District Court for the Western District of Kentucky. The United States moved for summary judgment on the grounds that the district court lacked subject matter jurisdiction because the actions of the United States qualified for the discretionary function exception to the FTCA. The plaintiff contends the Corps's actions were not discretionary and that the Corps was required to warn of a known and hidden danger. The district court granted the defendant's motion, finding the United States was insulated from liability under the exception, and dismissed for lack of subject matter jurisdiction.[1] We affirm the district court's order.

## II

Because the question before us is the legal issue of the district court's jurisdiction, we review the decision below de novo. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir.1996) (question of federal subject matter jurisdiction reviewed de novo). A dismissal for lack of federal subject matter jurisdiction is appropriate if the United States qualifies for the discretionary function exception to the FTCA. *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir.1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985).

The district court had jurisdiction, if at all, under 28 U.S.C. § 1346, as the United States is defending the claim. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291.

### A

Rich brought her case under the Federal Tort Claims Act, which waives some of the United States' sovereign immunity and gen-

---

**1.** Properly, the district court was granting a motion to dismiss for lack of jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), rather than a motion for summary judgment. It was treated as a summary judgment motion by the district court, however, and we affirm the dismissal. The difference is immaterial in this case. *See Cook v. Providence Hospital*, 820 F.2d 176, 178 (6th Cir.1987) (observing that a court should treat a Rule 12(b)(1) motion that is filed with a supporting affidavit as it would a motion for summary judgment); *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir.1976) (Friendly, J.) (noting similarities between treatment accorded 12(b)(1) motions and motions for summary judgment). *Cook* also noted that as with a motion for summary judgment, the district court need not hold a hearing on a Rule 12(b)(1) motion in the absence of complex legal or factual questions. *Cook*, 820 F.2d at 178.

erally authorizes suits against the United States for damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The discretionary function exception of the FTCA, however, preserves some of the sovereign immunity. It states that the provisions of the Act shall not apply to

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance, or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). When the circumstances of a case fall within this statutory exception, the court lacks subject matter jurisdiction. *Feyers*, 749 F.2d at 1225.

The text of the statute seems clear. The interpretation of the exception, however, has been difficult for the courts. The hallmark case interpreting the discretionary function exception was *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). The Supreme Court stated that discretionary acts and functions of government were intended to be protected from suit, and that "[w]here there is room for policy judgment and decision there is discretion." *Id.* at 36, 73 S.Ct. at 968. The concept of protection of policy judgments is maintained in the current Supreme Court standard for interpreting the discretionary function exception articulated in *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), and later upheld in *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

■ The *Berkovitz* analysis involves two conditions which must be met for the exception to apply. The first condition a court must find is that the action involved was a matter of choice for the employee. "[C]onduct cannot be discretionary unless it involves an element of judgment or choice." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958 (citing *Dalehite*, 346 U.S. at 34, 73 S.Ct. at 966). The logic behind this first condition is that the exception should not apply if there is a federal statute, regulation, or policy specifically prescribing a course of conduct or action for the employee. If there is no such prescription, the employee must exercise judgment and some protection should be provided for this exercise. *Id.*

Assuming the challenged action of the government involves an element of judgment, a second condition must be met for the exception to apply. "[A] court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id. United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), explains the logic of this second condition. "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 814, 104 S.Ct. at 2764.

"In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959. The district court found that the Corps's decision to replace the guardrail with one of the same design was discretionary as a matter of law, and this court agrees.

■ As the district court notes in its thoroughly analyzed and carefully written opinion, the plaintiff offered several design guidelines for bridges, attempting to convince the court that the Corps was under a duty to follow them. Rich cited standards set forth in the American Association of State Highway and Transportation Officials *Manual for Bridge Maintenance* (1987) ("AASHTO Manual"), the manual that federal regula-

tions recognize to be a guideline for the design of guardrails. *See* 23 C.F.R. § 650.303(a) & n.1. Rich conceded, however, that the design guidelines were not mandatory. The very language used in the manual indicates it is a suggestion, not a requirement. The AASHTO Manual suggests that "[w]here large scale damage has occurred in substandard or old type railing, consideration *should* be given to replacing it with a railing meeting current standards rather than replacing in kind." J.A. at 268 (AASHTO Manual at 70) (emphasis added). Further, AASHTO, the regulatory organization plaintiff cites, recognizes its own limitations. A preface to the AASHTO Manual states

> [t]his manual has been prepared to serve as a guide to use as a single source reference and *not intended to set national standards* because of the varying conditions and limited resources of manpower, equipment, and materials.... We intend the manual to solely identify a problem area and *make recommendations* that are considered to be effective operation and efficient management methods directed toward solving the problem.

Appellee's Br. Exhibit B (AASHTO Manual) (emphases added).

We agree with the district court's assessment that the regulations addressing bridge maintenance only prescribe inspection standards, and do not provide regulatory standards regarding the replacement or rehabilitation of railings. Absent mandatory standards and procedures for guardrail replacement, the decision of the Corps to replace the railing in kind immediately after the Horst accident was discretionary in nature, thus satisfying the first condition of the *Berkovitz* analysis.

The second condition of the *Berkovitz* analysis for the application of the discretionary function exception is that the decision must be of the kind the exception was intended to shield. The district court cited a line of cases in which courts have ruled that where a federal agency, here the Corps, must balance competing needs when deciding how to run a federal facility, the discretionary function exception to the FTCA has been held to apply. In *In re Ohio River Disaster Litigation*, 862

F.2d 1237 (6th Cir.1988), this court held that a decision by the Corps regarding how to alleviate ice problems near federal dams on the Ohio River was covered by the exception on the grounds that "[t]he purpose of the exception is 'to prevent the courts from intruding ... upon the decisionmaking authority of the other branches of government.'" *Id.* at 1248 (quoting *Estate of Callas v. United States*, 682 F.2d 613, 620 (7th Cir.1982)). The decision by the Corps to replace the guardrail at the Wolf Creek Dam with one of the same design as the damaged rail was a decision the Corps was free to make, and one which the exception was intended to protect.

The Fourth Circuit provides a persuasive argument for upholding the district court's dismissal of Rich's claims in its decision in *Baum v. United States*, 986 F.2d 716 (4th Cir.1993). The *Baum* court concluded that the government was immune from suit for an accident in which a passenger vehicle broke through a guardrail owned and maintained by the National Park Service. The plaintiff in that case, like Rich, claimed negligence in the design, construction, and maintenance of the guardrail. *Id.* at 718. There, as here, no mandatory statutes, regulations, or policies governed the design and construction. *Id.* at 721. The *Baum* court found that the planning level decisions by the National Park Service were the same type protected by the Supreme Court in *Gaubert. Id.* at 722 (citing *Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). The court rejected the plaintiff's argument that the National Park Service should have redesigned the guardrail system. The Fourth Circuit was persuasive in their conclusion that

> [t]he decision of how and when to replace a major element of a substantial public facility is, like the decisions involving design and construction, at bottom a question of how best to allocate resources. Such a decision is inherently bound up in considerations of economic and political policy, and accordingly is precisely the type of governmental decision that Congress intended to insulate from judicial second guessing through tort actions for damages.

*Id.* at 724.

In *Reminga v. United States*, 631 F.2d 449 (6th Cir.1980), Judge Lively stated the Sixth

Circuit's view on the discretionary function exception. Although the decision was pre-*Berkovitz*, the analysis still applies. Judge Lively wrote,

[i]t appears that this court has consistently held that the discretionary function exception ... does bar liability based on "deliberate official decisions and directives," failure of a regulatory agency to meet particular requirements desired by a member of the public when the desired action is not explicitly required by statute or regulation, and decisions generally which have "policy overtones."

*Id.* at 456 (citations omitted). The Corps's action had "policy overtones" and was not "explicitly required by statute or regulations," and therefore should be protected by the discretionary function exception. Because the discretionary function exception applies to the case at bar, the district court was correct in dismissing this action.

**B**

    Plaintiff additionally asserts that the discretionary function exception does not apply to this FTCA claim because the Corps failed to comply with a duty to warn of hidden danger. This court agrees with the district court that the danger surrounding the Wolf Creek Dam was open and obvious, relieving the Corps of any duty to warn. Plaintiff relies on *George v. United States*, 735 F.Supp. 1524 (M.D.Ala.1990), for support. In *George*, the court held that the exception did not apply where the government failed to warn swimmers in a National Forest recreation area of the presence of an alligator because the alligator was a hidden danger known to Forest Service officials which required a warning to users of the recreation area. *Id.* at 1526. Unlike the alligator, the steady decline and 90–degree curve were not hidden dangers. Where the danger is not hidden, there is no duty to warn. *Id.* at 1532. The Riches had driven by the dam before, had negotiated the 90–degree curve, and were aware of the hazardous conditions. As the district court noted, "[t]he danger presented in negotiating the turn at the south end of Wolf Creek Dam was self-evident." J.A. at 26 (Dist. Ct. Op. at 13). *See Chrisley v. United States*, 620 F.Supp. 285, 292 (D.S.C.1985) (holding the United States had no duty to warn of obvious danger at a Corps-maintained dam and lake). Further, the slick road conditions from the morning rain may fall under what Kentucky courts have described as "obvious natural hazards" which absolve landowners of liability for a failure to warn invitees of the dangers of natural conditions. *Caplan v. United States*, 877 F.2d 1314, 1317 (6th Cir.1989) (stating Kentucky landowners are insulated from liability for failure to warn or protect against "dangers that are created by the elements, such as forming of ice and the falling of snow") (quoting *Standard Oil Co. v. Manis*, 433 S.W.2d 856, 858 (Ky.1968)).

Moreover, plaintiff maintained on appeal that there should have been warning devices in addition to the ones already in place, including object markers on the guardrail and bridge abutment. This court recognizes that although the road is maintained by Kentucky and any warnings on the road are the responsibility of Kentucky, the railings and abutment are the responsibility of the Corps. Consequently, any object markers and warning devices on the railings and abutment fall within the discretionary judgment of the Corps, and decisions regarding placement of warnings are protected by the discretionary function exception of the FTCA. Any duty to warn of this open and obvious hazard is discretionary and exempt from an action in tort.[2]

**III**

For the reasons stated above, we hold that the actions of the Corps fell within the dis-

---

2. Plaintiff argues that *Cope v. Scott*, 45 F.3d 445, 451 (D.C.Cir.1995), supports her contention that a duty to warn is not protected by the discretionary function exception. The District of Columbia Circuit, however, held that while the type and placement of warning devices may not be protected by the exception, the decision to post warnings at all on the scenic roadway was protected as a discretionary function. In the case at bar, the Corps's decision not to place warnings in addition to those posted by Kentucky is protected as well. This court is not reviewing the decision of the location or type of markers the Corps placed, but rather the decision to post warning markers at all. We hold such a decision to be discretionary and protected.

cretionary function exception to the FTCA. We therefore **AFFIRM** the order of the district court dismissing the claim for lack of subject matter jurisdiction.