**Judith SHRIEVE, Individually and as Administratrix of the Estate of Emerson Shrieve, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 5:98–CV–522.**

United States District Court, N.D. Ohio, Eastern Division.

Sept. 2, 1998.

---

Jeffrey H. Friedman, Friedman, Domiano & Smith, Cleveland, OH, for Plaintiff.

Steven J. Paffilas, Office of the U.S. Attorney, Cleveland, OH, for United States Postal Service, United States of America, Defendants.

## OPINION AND ORDER

GWIN, District Judge.

On July 13, 1998, the defendant federal government filed a motion to dismiss the plaintiff's wrongful death suit [Doc. 14]. The defendant argues the plaintiff's wrongful death suit against the federal government is stopped by the doctrine of sovereign immunity. On August 18, 1998, the Court granted the plaintiff leave to file an amended complaint. The amended complaint clarifies that the United States, and not the United States Postal Service, is the party defendant in this action. That change is not enough to prevent the Court from considering the merits of the government's motion pursuant to Fed. R.Civ.P. 12(b)(1).

In ruling on this motion, the Court must determine whether the Postal Service's designation of curbside mail delivery for only one side of a residential roadway constitutes a discretionary function or duty. If the designation is a discretionary function of the Postal Service, then sovereign immunity stops this wrongful death suit.

For the following reasons, the Court will grant the government's motion to dismiss as this Court lacks subject matter jurisdiction over this cause of action.

### I.    Procedural history

Plaintiff is the duly appointed administratrix of the estate of Emerson Shrieve, her late husband. She brings this wrongful death and survivorship action under the Federal Tort Claims Act ("FTCA" or "Act"), 28 U.S.C. § 1346(b) and § 2671 et seq. Plaintiff Judith Shrieve is now a resident of New York. At those times relevant to this lawsuit, Shrieve was a resident of Streetsboro, Ohio. Shrieve seeks $1,750,000 in compensatory damages.

### II.    Factual background

The United States Postal Service maintained mailboxes on State Route 303, opposite the residence side of the street. This requires postal patrons to cross State Route 303 to obtain their mail. Plaintiff claims the Postal Service negligently placed mailboxes on the opposite side of the street from the decedent's residence. The Postal Service delivered the mail at such late hours, the plaintiff claims, that residents in that area had to cross the street in the dark in order to retrieve their mail. Further, plaintiff claims the Postal Service was aware of the problem as the City of Streetsboro had requested the Postal Service reposition mailboxes on the residents' side of the street.

Near December 20, 1996, plaintiff's decedent, Emerson Shrieve, and his wife, Plaintiff Judith Shrieve, lived at 993 S.R. 303, in Streetsboro, Ohio. There were no lights on State Route 303 and the speed limit was 45 miles per hour.

On December 20, 1996, at approximately 5:45 p.m., plaintiff's decedent crossed State Route 303 to retrieve his mail, which had just arrived. As plaintiff's decedent attempted to cross State Route 303 to retrieve his mail, two westbound vehicles struck and killed him. Plaintiff filed a claim with the Postal Service before filing suit in federal court.

### III.    Motion to dismiss

When subject matter jurisdiction is challenged under Fed.R.Civ.P. 12(b)(1), the plaintiff has the burden of proving that the Court has jurisdiction over the cause of action. Madison–Hughes v. Shalala, 80 F.3d 1121, 1130 (6th Cir.1996); Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir.1986). In ruling on such a motion, the district court may resolve factual issues when necessary to resolve its jurisdiction. Madison–Hughes, 80 F.3d at 1130; Rogers, 798 F.2d at 918.

A Rule 12(b)(1) dismissal for lack of subject matter jurisdiction is appropriate if the Defendant United States qualifies for the

discretionary function exception under the Federal Tort Claims Act. *Rich v. United States,* 119 F.3d 447, 449 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998).

## IV. Federal Tort Claims Act

■ The Federal Tort Claims Act is the exclusive waiver of sovereign immunity for actions sounding in tort against the United States, its agencies, and its employees acting within the scope of their employment. *See* 28 U.S.C. § 2679. *See also Arbour v. Jenkins,* 903 F.2d 416, 419 (6th Cir.1990).

The Act generally authorizes suits against the United States for damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

The Act includes a number of exceptions to this broad waiver of sovereign immunity. The exception relevant to this case provides that no liability shall lie for

> [a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

■ Two conditions must be met for the discretionary function or duty exception to apply. *Rich,* 119 F.3d at 450. A court must find under the first condition that the action involved was a matter of choice for the federal employee. *Id.* "[C]onduct cannot be discretionary unless it involves an element of judgment or choice." *Berkovitz by Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). This first condition means that the discretionary function exception should not apply if there is a federal statute, regulation, or policy specifically prescribing a course of conduct or ac-

tion for the federal employee. If there is no such prescription, the employee must exercise judgment and some protection should be provided for this exercise. *Rich,* 119 F.3d at 450.

Assuming the first condition is met, a second condition also must be met for the discretionary function exception to apply. "[A] court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* The Supreme Court of the United States has explained the logic of this second condition. "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). "In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Rich,* 119 F.3d at 450 (*quoting Berkovitz,* 486 U.S. at 537, 108 S.Ct. 1954).

■ If the challenged conduct is of the nature and quality that Congress intended to protect, then the discretionary function exception applies even if the decision maker acted negligently. *See Rosebush v. United States,* 119 F.3d 438, 442 (6th Cir.1997); *Myslakowski v. United States,* 806 F.2d 94, 97 (6th Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 793 (1987). If a case falls within the discretionary function exception, the court lacks subject matter jurisdiction. *Rosebush,* 119 F.3d at 441.

## V. Judgment or choice

Plaintiff alleges that the Postal Service's placement of mailboxes on the side of State Route 303 opposite from the residence she had shared with her husband was negligent and the direct and proximate cause of the decedent's death.

■ The Sixth Circuit directs that the Court first must determine whether the act or omission under challenge here "violated a mandatory regulation or policy that allowed

no judgment or choice." It is the governing administrative policy, not the agency's knowledge of danger, that determines if "conduct is mandatory for purposes of the discretionary function exception." *Rosebush*, 119 F.3d at 441–42.

At the time of the accident, the Kent, Ohio, Post Office, and Matthew Smith, Jr., as its postmaster, was responsible for the delivery of mail on State Route 303 in Streetsboro, Ohio. For an indefinite period of years extending back until at least 1992, the Postal Service provided curbside mail delivery service to localities on State Route 303 in Streetsboro only along the eastbound side of the roadway.

It was Postmaster Smith's responsibility to determine what mode of delivery, and what configuration of delivery routes, best met the needs of the Postal Service and its customers. On at least one occasion prior to the accident, Postmaster Smith reviewed the delivery route that served State Route 303 in Streetsboro. He weighed the efficiency, service and numerous safety concerns of the route, and determined that mail delivery should continue only on the eastbound side of the roadway.

Available modes of daily mail delivery are set forth in the Postal Operations Manual ("POM") at Subpart 631. For residential areas, the delivery options are curbside, sidewalk, or central delivery. Subpart 631.31. The only other postal regulations that address the configuration of delivery routes are contained in the Management Delivery Services Handbook, in which Subparts 141, 241, and 242 address the need for delivery managers to continually insure that delivery routes are configured so that delivery is accomplished as efficiently as possible.

POM Subpart 631.32 provides that curbside delivery can be provided when a letter carrier can safely and conveniently serve mail boxes and customers have reasonable and safe access to the boxes. Among the optional delivery route configurations available to delivery managers are routes on which the letter carriers only will deliver to boxes on one side of a roadway. Subpart 632.524 of the POM specifically provides that customers must locate their mailboxes on the right hand side of the road in a letter carrier's direction of travel in those instances where the local delivery manager determines that the delivery route will traverse a roadway in only one direction. Also, the guideline notes that all mailboxes must be on the right hand side of the road for new rural or highway contract routes. 632.524.

Plaintiff says Subpart 632.524 is itself a mandatory regulation that prevents a postmaster from maintaining postal routes and boxes in a discretionary way. Plaintiff says this regulation is mandatory because Subpart 632.524 says in part: "Boxes must be placed to conform to state laws and highway regulations."

The decision of the postmaster to locate mailboxes only on the eastbound side of State Route 303 caused postal customers to cross the highway to obtain their mail. Plaintiff claims the effect of that decision violated several sections of the Ohio Revised Code regulating pedestrian traffic on highways and roadways. For instance, Ohio Rev.Code § 4511.50(C) provides that:

Where neither a sidewalk nor a shoulder is available, any pedestrian walking along and upon a highway shall walk as near as practicable to an outside edge of the roadway, and, if on a two-way roadway, shall walk only on the left-hand side of the roadway.

In addition, Ohio Rev.Code § 4511.051 states that no person, except as directed by a police officer, shall:

(A) As a pedestrian, occupy any space within the limits of the right-of-way of a freeway, except: in a rest area; on a facility that is separated from the roadway and shoulders of the freeway and is designed and appropriately marked for pedestrian use; in the performance of public works or official duties; as a result of an emergency caused by an accident or breakdown of a motor vehicle; or to obtain assistance.

State Route 303 has no sidewalks, no shoulders, no traffic control devices, and no marked crossings to aid pedestrians in traversing the highway. Further, the Streetsboro City Council addressed the concerns of citizens regarding postal policy along State

Route 303 on several occasions. Plaintiff says that in reality, the postmaster's decision to provide curbside delivery to only the eastbound side of State Route 303 requires pedestrians to violate the laws of the State of Ohio in order to obtain a governmental service and, in doing so, to risk their lives.

By making provisions to ensure the safety of only letter carriers and not postal customers, plaintiff says the defendant violated the mandatory directive of Subpart 632.425.[1] That regulation requires that "[curbside mailboxes] . . . be reasonably and safely accessed by customers." Plaintiff say the defendant also violated the mandatory directive of Subpart 631.32, which states that: "Delivery may be provided to boxes at the curb so they can be safely and conveniently served by the carrier from the carrier's vehicle, and so that customers have reasonable and safe access." Plaintiff says Subparts 632.524 and 631.32 exist to ensure the safety of letter carriers in conjunction with, not at the expense of, the safety of postal patrons.

Plaintiff argues that by violating what plaintiff claims are mandatory provisions of Subparts 632.524 and 631.32, the defendant is not afforded the protection of the discretionary function exception. In *Berkovitz*, the Supreme Court said: "When a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply." 486 U.S. at 544, 108 S.Ct. 1954.

However, internal regulations of the post office, such as those found in the Postal Operations Manual, lack the force of law and their violation does not show negligence *per se*. *Doe v. United States*, 718 F.2d 1039, 1041 (11th Cir.1983). Contrary to what plaintiff argues, Subparts 632.524 and 631.32 do not mandate that mail delivery be made to both sides of State Route 303. In fact, POM Subpart 632.524 gives the postmaster the discretion to place the mailbox on only one side of a road.

The Court also finds plaintiff has misconstrued the mandatory nature of these administrative guidelines. For example, 632.524

required that mailbox *placement* must conform to state law. There is nothing in the record to suggest the placement along State Route 303 violated state law, such as height of poles supporting the boxes, or the proper distance between such poles and the roadway. Plaintiff instead focused her argument on what she claims were violations of state law *as the result* of the post office decision on where to place the mailboxes.

In the instant case, the conduct at issue is the decision to provide letter carrier curbside delivery service only to the eastbound side of State Route 303 in Streetsboro, Ohio. Therefore, customers with residences on the other side of the roadway were required to place their mailboxes on the eastbound side if they wished to receive curbside delivery service. No mandatory statute, regulation or policy prevents a postmaster from establishing or failing to alter such a delivery route. In fact, postal regulations explicitly allow for such routes when deemed necessary. *See* POM Subpart 632.524. The delivery route configuration chosen was clearly one of the route configuration options within the discretion of the postmaster. The Court finds the Defendant United States has met the first condition for invoking the discretionary function exception.

### VI. Second-guessing the post office

The Court now must decide whether the defendant meets the second condition for invoking the discretionary exception to the Federal Tort Claims Act. That condition is that the discretion said to be exercised in the instant case is really that type of government decision that § 2680(a) was designed to shield, so that the courts will not be second-guessing legislative or administrative decisions grounded in social, economic, and political policy by means of a tort suit. *See Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

The Court believes the Postal Service's decision resembles the sort of policy choices that Congress intended to protect with sovereign immunity. The Supreme Court has noted that "[w]hen established governmental

---

**1.** The defendant points out that plaintiff mistakenly refers to this subpart in her brief as Subpart 632.425 when in fact she is most likely referring to Subpart 632.524.

policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *United States v. Gaubert,* 499 U.S. 315, 324, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

Decisions concerning the configuration of mail delivery routes are part and parcel of what Congress described as "... the responsibility of the Postal Service to maintain an efficient system of collection, sorting, and delivery of the mail nationwide." 39 U.S.C. § 403(b)(1). Each decision made with regard to the level of delivery and service provided to a particular set of postal customers affects the economic efficiency of the Postal Service. Each type of residential postal delivery service (door, box at curb, box across street, cluster box at another location, or general delivery at a post office), has consequences for the Postal Service's economic efficiency, the safety of letter carriers and customers, and the satisfaction of postal patrons. The myriad of administrative decisions of this sort made daily by Postal Service officials are exactly the type of decisions the discretionary function exception was designed to shield from review under the Federal Tort Claims Act.

Adding support to this decision, although not dispositive on the merits, is another stat-utory exception to the Federal Tort Claims Act. This exception is rooted in the core mail delivery operations of the Postal Service. *See* 28 U.S.C. § 2680(b).[2] While the government does not rely on this provision, the Court also notes that selecting curbside mailboxes for one side of a roadway, at least indirectly, implicates the core functions of the United States Postal Service.

Various Postal Service functions, including many not so close to its core purpose, have been found to involve discretionary functions or duties. *See, e.g., Myslakowski,* 806 F.2d at 98–99 (decision to sell surplus vehicles "as-is-where-is" and to provide no further warnings at point of sale concerning any defects); *Gager v. United States,* 149 F.3d 918 (9th Cir.1998) (postmaster's decision not to train employees to detect mailbombs); *Leslie v. United States,* 986 F.Supp. 900, 906 (D.N.J. 1997) (postmaster's decision to rely solely on local law enforcement and provide no further security at a post office); *Wisner v. Unisys Corp.,* 917 F.Supp. 1501, 1509–10 (D.Kan. 1996) (exception extended to cover contractor carrying out Postal Service decisions made in designing machines to quickly sort mail).

In the instant case, Postmaster Smith determined that delivery along both sides of State Route 303 in Streetsboro would increase the danger to letter carriers. Smith's reasons for determining so appear in his attached declaration.[3] Additionally, this de-

2. The provisions of the Federal Tort Claims Act shall not apply to—
    (b) Any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter.
    28 U.S.C. § 2680(b).

3. Postmaster Smith testified as follows in his June 8, 1998, declaration submitted as part of the government's motion to dismiss.
    10. I determined that delivery along both sides of S.R. 303 in Streetsboro would unacceptably increase the danger to the Letter Carriers. There is a significant inherent danger to the Letter Carriers who must stop at each mailbox along that section of S.R. 303 with a portion of their vehicle remaining in the roadway because there are insufficient shoulders available to pull their vehicles completely off the roadway. One reason the delivery route services the eastbound side of the roadway, as opposed to the westbound side, is because S.R. 303 progresses from a higher to a lower elevation as it is [sic] travels in a westbound di-rection. Providing curbside mailbox service only along the eastbound side of the roadway minimizes the number of stops that must be made in the 45 mph roadway and especially the number of the more dangerous downhill stops. Vehicles, including the tractor trailers that are common on the roadway, tend to travel at a higher rate of speed when going downhill, and they have greater difficulty stopping for a Letter Carrier when necessary on a downhill slope, especially during regular inclement weather conditions.

    ...

    12. Once a determination has been made that a Letter Carrier will only travel in one direction on a roadway, Subpart 632.524 of the Postal Operations Manual requires customers to locate their curbside mailboxes on that side of the roadway.... Unlike Letter Carriers who must stop at each mailbox along the route, regardless of traffic conditions, customers on the westbound side of S.R. 303 in Streetsboro can wait until it is entirely safe to cross the

livery configuration allows the route to be completed more efficiently. Postmaster Smith's decision was thus grounded in social and economic policy.

The postmaster had to weigh numerous social and economic factors in making his decision. The narrow berm on the roadway is not wide enough to allow the postal vehicle to safely pull off the road when depositing the mail. Providing curbside mailbox service only along the eastbound side of the roadway minimizes the number of stops that must be made in the 45 mile-an-hour roadway. Most importantly, it minimizes the number of downhill stops. On downhill slopes, postal drivers are especially vulnerable to 18 wheelers and other large trucks which might not be able to negotiate safely around the carrier's vehicle. This is especially true during times of inclement weather and on curves. The postmaster had to weigh the inherent danger to letter carriers who must stop at each mailbox along the section of State Route 303, regardless of traffic or weather conditions, with the danger posed to customers on the westbound side of State Route 303, who can wait until it is entirely safe to cross the roadway prior to retrieving their mail. The postmaster determined that delivery along both sides of State Route 303 would needlessly increase the danger to the letter carriers. The discretionary function exemption protects from court liability decisions concerning the proper response to hazards. *Rosebush*, 119 F.3d at 443 (*citing Lockett v. United States*, 938 F.2d 630, 639 (6th Cir. 1991)); *Myslakowski*, 806 F.2d at 97.

Finally, this delivery configuration allowed the route to be completed more efficiently since the route could be completed in less time. Title 39 U.S.C. § 101(a) requires the Postal Service to provide "prompt, reliable, and efficient services." The postmaster's decision clearly was grounded in social, political and economic policy and thus protected by the discretionary function exception found at 28 U.S.C. § 2680(a).

Additionally, though the postmaster in this case weighed the various policy consider-

ations at stake, the exception would apply even if he had not done so. The decision in question need only be susceptible to policy analysis, that analysis need not have actually taken place. *See Rosebush,* 119 F.3d at 444; *Myslakowski,* 806 F.2d at 97.

■ The Court also finds that the Defendant United States had no particular duty to warn postal patrons of hidden dangers in retrieving their mail. The danger of being struck by traffic on State Route 303 when accessing their mailboxes was not a hidden danger. Plaintiff's decedent and his neighbors had done so many times without incident. *See Rich,* 119 F.3d at 452 ("the steady decline and 90–degree curve were not hidden dangers" to plaintiffs and government had no duty to warn).

The Court also notes that in one reported case the court disregarded South Dakota law on sidewalk accidents and found that the government could not be held liable for failing to maintain the premises on which a mailbox was located, even though negligent maintenance could result in dangers that were obvious, reasonably apparent, or as well known to the plaintiff as to the post office. *Ewing v. United States,* 231 F.Supp. 1001, 1003 (D.S.D.1964) (function of locating an outside mailbox is exercise of discretion and outside scope of FTCA). Locating residential mailboxes along one side of the highway but not the other resembles a reported Federal Tort Claims Act case brought by a rape victim. In *Doe v. United States,* 718 F.2d 1039 (11th Cir.1983), a federal appeals court found that the decisions to locate a post office in a particular area of North Miami Beach and on scheduling its operations were discretionary functions, thus stopping the suit due to sovereign immunity. *Id.* at 1042.

The Court, therefore, finds that the defendant has met both conditions for invoking the discretionary function or duty exception to plaintiff's reliance on the waiver of sovereign immunity in the Federal Tort Claims Act.

---

roadway prior to doing so to retrieve their mail. For this reason, I have determined that their access to their mailboxes under the cur-

rent configuration of the route is reasonable and safe.

Doc. 14, exh. A, at ¶¶ 10, 12.

### VII. Conclusion

Accordingly, the Court grants the government's motion to dismiss plaintiff's wrongful death action as this Court lacks subject matter jurisdiction.

IT IS SO ORDERED.