MERRITT, Circuit Judge,
dissenting.
It seems to me that a private person acting as agent of a company, who is trying to open the door of a car with a regular winch with a strong spring, would normally be subject to standard tort principles in case of injury. Instead, my colleagues simply say there can be no such liability, despite the statutory language,[1] if the con *946 duct “involves choice or judgment” because — for some unstated reason — liability for such a choice “amountfs] to a challenge as to the overall execution of the research project.” (Opn., p. 944.) Why? The problem with formulating a standard or principle this way is that almost every act by government or private agent in the scope of employment would “challenge a policy” if it is for the purpose of carrying out some government or private interest, policy or plan.
I.
The court’s theory is incoherent and directly contrary to the early case of Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), decided not long after the Federal Tort Claims Act was enacted. In the Indian Towing case the Court concluded that once the government makes a protected policy, every implementing step like conducting an experiment or repairing damaged equipment must proceed with “due care” in carrying out its decision. In Indian Towing the government set up a lighthouse service. The government agent did not “repair” the light properly:
The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in working order ... and to repair the light or give warning that it was not functioning.
350 U.S. at 69, 76 S.Ct. 122 (Emphasis added). Likewise, once the government decided to carry out the hazardous IED experiment “it was obligated to use due care.” The firearms agent using the winch did not have to ponder the nature of a policy. No considerations of social policy would come to mind in getting the door opened. The question should be the regular tort question for “private” persons in the economy: did the agent use due care?
Otherwise, there are severe distributional consequences for the entire society. The costs of torts by government agents are distributed only to private individuals. Here the plaintiff is permanently disabled by alleged government error. The government distributes income to the private companies that manufacture the IED’s, the car and the winch. But the plaintiffs injuries somehow become a “challenge to government policy” and cannot be compensated.
II.
The nature of the conduct here is perfectly clear: a federal agent attempted to remove a door from a minivan with a winch in order to obtain evidence from within. We need not assess the broader context of the experiment to reach this simple understanding. Of course, the baseline definition of the conduct should not assume negligence before trial — at least not anymore than it should assume that the conduct involved policy judgment. But I fail to see how a simple description of the agent’s action conflates discretionary-function analysis with negligence, as the majority believes it does.
Having defined the conduct, its context becomes relevant to the legal standard we must apply: Whether the government agent’s decision was “grounded in social, economic, [or] political policy.” United States v. Gaubert, 499 U.S. 315, 323, 111 *947 S.Ct. 1267, 113 L.Ed.2d 335 (1991). To make this determination, we typically must discern the legal authority for an agent’s action. Even where there is no explicit constraint on an agent’s action — and here there is not — discretion is guided by some sort of governmental pronouncement. An agent acquires immunity for the government not simply by making a choice — she acquires it by making a choice that substantively constitutes the policy behind a statute, regulation, or agency guidance. See id. at 325, 111 S.Ct. 1267 (holding that the discretionary function exception only protects actions “grounded in the policy of the regulatory regime”).
In this case, the Government has been quite sketchy about the authority or purpose of the IED experiment at issue. Without an adequate explanation of the authority for the experiment — which appears not to have been disclosed before the district court granted the motion to dismiss — it is clear that the agent’s decision was not grounded in any policy that the government or my colleagues can articulate. Even if we assume some sort of agency guidance and interpret the exercise in the way most favorable to the Government — as a training mission to recover evidence — I fail to see how the decision to winch the door off the van required any sort of policy judgment.
At root, policy judgment requires a balancing of interests. See Myers v. United States, 17 F.3d 890, 898 (6th Cir.1994) (“Th[e] balancing of interests ... characterizes the type of discretion that the discretionary function exception was intended to protect.”). Of course, balancing is a necessary element of discretion. The majority believes that the agent’s decision to use a winch was susceptible to policy analysis because it required him to “execute the experiment in a way that balanced the safety needs of the personnel and the need to gather evidence from the vehicles.” (Opn., p. 943.) This sort of balancing is a meaningless way to identify policy analysis. Had the agent crashed his car while speeding to the scene of the exploded van, he would have tacitly been balancing the safety of his passengers against the need to reach the subject of the experiment. Yet crashing a car is not behavior from which the government can claim immunity. The relevant question is not whether the government actor engaged in some sort of balancing, but whether judicial interference with the actor’s balancing would “seriously handicap efficient government operations.” United States v. Varig Airlines, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (quoting United States v. Muniz, 374 U.S. 150, 163, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963)).
Complex balancing pursuant to stated regulatory authority has characterized the situations in which courts apply the discretionary function exception. In United States v. Varig Airlines, for example, the Federal Aviation Administration conducted this sort of balancing when determining how best to carry out regulations requiring it to inspect aircraft. Varig Airlines, 467 U.S. at 814-20, 104 S.Ct. 2755. As a result, the government’s ultimate decision to approve a defective airplane was grounded in policy and subject to the discretionary function exception. Similarly, a series of this circuit’s cases have held the government immune from suit for failing to maintain public roads and grounds, reasoning that maintenance decisions require government actors to make multi-factor calculations about how to manage finite resources. See Edwards v. TVA 255 F.3d 318, 324-25 (6th Cir.2001) (TVA must balance financial, aesthetic, environmental, and safety concerns when determining how to maintain area around dam); Rich v. United States, 119 F.3d 447, 451 (6th Cir.1997) (Army Corps of Engineer’s decision about how to maintain road is “at bottom a *948 question of how best to allocate resources”); Rosebush v. United States, 119 F.3d 438, 444 (6th Cir.1997) (maintenance of campsite requires “balancing the needs of the campground users, the effectiveness of various types of warnings, aesthetic concerns, financial considerations, and the impact on the environment, as well as other considerations”).
By contrast, no complex balancing was required in this case. The challenge facing the agent was how to get the door off the van to recover evidence. The Government points to no statute, regulation, or agency guidance granting the agent'discretion to choose among a number of methods to achieve this task. Assuming that the agent had authority to remove the door, the ultimate decision to use the winch required no calculus as to the best use of government resources or the cost of proceeding otherwise. Indeed, there is no evidence that the agent had any tool but the winch available, or that he did anything other than grab the instrument nearest at hand. The decisional process the agent employed is not the sort of judgment characteristic of social, economic, or political policy.
The discretionary function exception has not always been so muddled as the majority makes it today. In Downs v. United States, 522 F.2d 990 (6th Cir.1975), this Court considered the FBI’s botched rescue from an airplane highjacking. Alerted that the plane had landed but was in need of fuel, agents refused to provide the fuel and attempted to shoot out the plane’s tires and engines. In the course of this action, the highjacker shot and killed the passengers. We held that the discretionary function exception did not apply in a subsequent negligence suit against the government. The relevant question was whether the agents’ activities entailed “the formulation of governmental policy, whatever the rank of those so engaged.” Downs, 522 F.2d at 997. We concluded that the answer was no, and supported this conclusion with the reasoning that “[t]he need for compensation to citizens injured by the torts of government employees outweighs whatever slight effect vicarious government liability might have on law enforcement efforts.” Id. at 998. In other words, the lawsuit did not substantially interfere with the FBI’s highjacking policy-
The law has not changed since Downs. We are still required to assess whether the decision of a government actor is grounded in social, economic, or political policy; and the motivation for this inquiry is still to prevent “judicial second-guessing” of such policies. Gaubert, 499 U.S. at 323, 111 S.Ct. 1267. Yet somehow our jurisprudence has come unmoored from these principles. We now seem inclined to redistribute the costs of accidents created by government to private individuals who are much less capable of shouldering the burden. Because the agent’s decision to use a winch required no policy judgment, and because the plaintiffs suit would in no way interfere with government operations, I respectfully dissent.

. The statute is intended to waive immunity "where the United States, if a private person, *946 would be liable to the claimant in accordance with the law of the place where the act or omission occurred.” 28 U.S.C. § 1346(b)(1).